WILLIAM PETERSON *et al.*

*v.*

JOHN C. JACKSON *et al.*

*Opinion filed April 16, 1902.*

1. ESTATES TAIL—*estates tail abolished in Illinois.* Under section 6 of the Conveyance act, where, at common law, any person might become seized in fee tail by virtue of any devise, such person shall be adjudged to be seized thereof for his natural life only, and the remainder will pass in fee simple absolute to the person to whom the estate tail would, at the death of the first devisee, first pass, according to the course of the common law, under the devise.

2. WILLS—*devise construed as passing life estate with remainder, under section 6 of Conveyance act.* A devise to the testator's four children, "to them only and the heirs of their bodies, share and share alike," passes, under the statute, a life estate to the four children, with remainder in fee in the share of each of them to the heirs of their respective bodies, the words "share and share alike" referring to the four children of the testator.

3. SAME—*effect where a contingent remainder is devised.* Where a contingent remainder is devised the fee descends to the heir, and when the contingency happens the heir's estate opens to let in the remainder.

4. CONVEYANCES—*when interests of heirs pass by deed.* Where a testator devises property to his daughter and the heirs of her body, if she has no heirs of her body at the testator's death the remainder in fee descends to those who were the testator's heirs at his death, subject to being divested by the birth of children to the daughter, and hence their interests will pass to their assigns, and the title will remain in such assigns if the daughter dies without heirs of her body.

5. PARTITION—*partition of an estate among life tenants does not bind remainder-men.* A decree in an *ex parte* partition proceeding by a widow and her four children to divide lands in which the children had a life estate as tenants in common, subject to the general life interest of their mother under the provisions of a will, by virtue of which decree separate tracts were allotted to each child, is not binding upon the remainder-men, under the will, who were not parties, even though the decree finds that the four children were the owners of the fee.

6. LIMITATIONS—*when statute begins to run against remainder-men.* Where lands held in common by four children as life tenants are partitioned among them and each takes possession of the tract allotted to him, which he conveys, surrendering possession to his

grantee, the Statute of Limitations begins to run against the remainder-man, as to each tract, upon the death of the life tenant to whom the same was allotted, and is not postponed until the death of the last surviving life tenant; and this is true notwithstanding the partition decree had no effect upon the remainder.

WRIT OF ERROR to the Circuit Court of Stark county; the Hon. L. D. PUTERBAUGH, Judge, presiding.

PHILIP E. MANN, and H. C. PETTETT, for plaintiffs in error.

JAMES H. RENNICK, for defendants in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

James Jackson died July 2, 1871, leaving Elizabeth J. Jackson, his widow, and George Jackson, Joseph Jackson, Mary Peterson, Rachel Taylor and Elizabeth Powers his children and only heirs-at-law. He was the owner of a large amount of land in Stark county, and left a last will and testament, which was admitted to probate, and by which he devised the same as follows:

"*First*—To Mary Peterson, (formerly Mary Jackson,) my daughter, I give and bequeath the west half of the south-west quarter of section twenty-seven (27), town twelve (12) north, range seven, east of the fourth principal meridian, in said Stark county; also twenty (20) acres, being the south half of the south-west quarter of the north-west quarter of said section.

"*Second*—To George Jackson, Joseph Jackson, my sons, and to Elizabeth Jackson and Rachel Taylor, (formerly Rachel Jackson,) they being my daughters, I give and bequeath the balance of my real estate in the county of Stark aforesaid, to them only and the heirs of their bodies, share and share alike, the said real estate being the east one-half of the south-west quarter of section twenty-seven (27); the south-east quarter of same section; sixty (60) acres of the west half of the north-west

quarter of section 27; sixty (60) acres of the north-west quarter of section thirty-four (34), and in the north-west corner of said quarter section the south half of the north-west quarter of section twenty-three (23), all of the said land being in township twelve (12) north, range seven (7), east of the fourth principal meridian, and in Stark county, Illinois; also ten (10) acres of land, the same being wood land, and the east half of the south half of south-west quarter of south-west quarter of section 2, in township 12, north, range six (6), east of the fourth principal meridian and in the same county and State.

"*Third*—And unto my wife, Elizabeth J. Jackson, I give and bequeath all my goods and chattels and my personal effects, including all moneys and effects or credits, she to have and to hold the same unto her sole use and ownership, and in case of my decease before the death of my said wife she is to have and to use and enjoy all of my said real estate until her death."

Elizabeth Jackson, the daughter, was married to John Powers. The widow and all the children of the testator named in the second clause of the will having died, the bill in this case was filed in the circuit court of Stark county by defendants in error, who are heirs of the bodies of said children, for a partition of the lands devised by said second clause. A large number of parties were made defendants to the bill, some as tenants in common in fee simple with complainants, others as grantees of heirs, or as adverse claimants under deeds purporting to convey the fee from children named in said second clause, which deeds were alleged to be null and void, and still others were made defendants as mortgagees. James L. Dawson and Patrick Cain, defendants, by their separate answers admitted title to the lands to have been vested in James Jackson at his death, and claimed title to portions of the land by conveyances from children of James Jackson named in the will, and pleaded the Statute of Limitations. Ella Wickham, one of the defendants, by

her answer denied title in James Jackson, and claimed the fee by direct chain of title from the government and purchase from the devisee, Joseph Jackson, and pleaded the Statute of Limitations by possession and payment of taxes. The mortgagees and other defendants made similar claims. The heirs of Joseph Jackson answered, denying that the interests of the parties were correctly set forth in the bill, and claimed that the division should be per capita among all the heirs as a class. A number of the defendants were defaulted, and the cause was referred to the master in chancery to take the proofs and report the same with his conclusions. Objections to the report were filed and overruled and were renewed as exceptions to the report. The cause was heard and the conclusions of the master were adopted and a decree entered granting the relief prayed for, and commissioners were appointed to make partition. The defendants James L. Dawson and Patrick Cain died, and their heirs and representatives were made parties. The commissioners reported that they were unable to make partition and appraised the value of the lands. The court approved the report and entered a decree for the sale of the lands, and ordered the master to distribute the proceeds in accordance with the findings of the decree. Plaintiffs in error have brought the record here by writ of error for review.

The first and second errors assigned are, that the court erred in the construction of the will. The court construed the second clause as devising to the four children, George Jackson, Joseph Jackson, Rachel Taylor and Elizabeth Powers, estates for life as tenants in common in the lands devised, an undivided one-fourth to each, with remainder in fee simple absolute in the share of each of said children to the heirs of the body of such child, subject to the use and enjoyment of all the lands by the widow, Elizabeth J. Jackson, during her life. The argument for plaintiffs in error in the first place is, that

the devise was of the fee to the four children, and then, apparently abandoning that ground, it is insisted that the devise was to the four children named in the will and the heirs of their bodies as a class, or, in other words, that the children and grandchildren constituted a class to take the lands in equal shares between them. In our opinion the construction given to the will was correct. The sixth section of the act concerning conveyances provides, that in cases where, by the common law, any person or persons might become seized in fee tail of any lands by virtue of any devise, such person or persons, instead of being or becoming seized thereof in fee tail, shall be deemed and adjudged to be and become seized thereof for his or her natural life only, and the remainder shall pass in fee simple absolute to the person or persons to whom the estate tail would, on the death of the first devisee, first pass, according to the course of the common law, by virtue of such devise. Under the common law the four children in this case would have become seized of the lands in fee tail as tenants in common, and under our statute they were seized thereof for their natural lives only, with remainder in fee in the share of each to the heirs of their respective bodies. (*Blair* v. *Vanblarcum*, 71 Ill. 290; *Lehndorf* v. *Cope*, 122 id. 317; *Summers* v. *Smith*, 127 id. 645.) The words "share and share alike" refer to the four children, and it is plain that the testator intended an equal division between them, with the remainder in each share to the heirs of the life tenant.

Other assignments of error question the conclusions of the court respecting the effect of the partition proceeding. After the death of the testator his widow and the five children filed their petition in the circuit court of Stark county for a partition of the lands between the four children, who were life tenants under the second clause of the will. The proceeding was *ex parte*, and a decree was entered in pursuance of the petition at the October term, 1872. The lands devised in fee to Mary

Peterson were subject to the life use by the widow, and she was one of the petitioners. The decree recited the devise to Mary Peterson and the devise of the other lands to the other four children as tenants in common, subject to the life estate of Elizabeth J. Jackson, and found that the widow was an aged woman and it was desirable to have partition of the lands, subject to her life interest, so that she might lease her interest to the several owners of the reversion to secure her support, and that no other persons had any interest in the lands, in law or in equity. By this decree commissioners were appointed to allot and divide the lands held in common, setting off one-fourth to each of the petitioners, George Jackson, Joseph Jackson, Rachel Taylor and Elizabeth Powers. The commissioners reported a partition, which was confirmed, and a decree was entered accordingly. Afterward, on September 10, 1875, Joseph Jackson and wife conveyed by warranty deed to James L. Dawson a tract of land set off to Joseph Jackson in said partition proceeding, and on October 7, 1875, Rachel Taylor and husband, by their warranty deed, conveyed a tract set off to said Rachel Taylor in the partition. These deeds purported to convey the fee, and Dawson took possession of the lands described in them in the spring of 1876 and remained in possession until his death, during the pendency of this case, when the possession passed to his widow and heirs. Dawson claimed to own the lands by virtue of the deeds and paid the taxes. Rachel Taylor, who had a life estate in one of these tracts, died in 1882, and her life estate came to an end. Joseph Jackson, grantor in the other deed, died November 17, 1898, and his life estate terminated. The widow, Elizabeth J. Jackson, died October 2, 1876, and her interest in all the lands terminated. Elizabeth Powers was in possession of the premises set off to her and claimed them in fee, and paid all taxes and built improvements on the same. On October 13, 1897, said Elizabeth Powers, then a widow, by

her warranty deed conveyed lands which had been set off to her in the partition proceeding to Patrick Cain, and he went into possession and remained in possession until he died, while this suit was pending, when the possession passed to his heirs. George Jackson died March 27, 1888, and Thomas J. Jackson, his son, on August 26, 1895, made a conveyance of an interest in one tract of the land to John Powers, husband of Elizabeth Powers. John Powers died September 15, 1896, leaving his widow surviving him, and nephews and nieces, who were his heirs-at-law. George Jackson, Joseph Jackson and Rachel Taylor each left heirs of their bodies, to whom the fee in their respective shares passed under the devise. Elizabeth Powers died February 1, 1898, without heirs of her body, having never had any child. There were other conveyances, but those above stated are sufficient to show the relation of the question raised respecting the partition proceeding.

Plaintiffs in error claim that the decree in that case was a partition of the fee, and that the decree which found the title to be in fee was conclusive, not only upon the parties to the proceeding, but also upon the remainder-men. The findings of the decree were that the children named in the second clause, who were petitioners, were the owners in fee of the premises and that no other party had any interest therein. Under that decree the lands were divided and set off in severalty to the parties, who took possession of their respective shares. The circuit court had jurisdiction and its decree bound the parties and their privies, but a stranger to the proceeding was not bound by it. The parties to the proceeding, and any who might claim under or through them, would be concluded by the decree and estopped by the record from asserting title to the shares of each other, but the owners of the fee were not before the court personally or by representation in any manner, and the court had no jurisdiction over them. They do not claim through or under

the parties to that proceeding, but derive their title by the devise in the will. The testator gave a life estate to the parents and the remainder in fee to the heirs of their bodies. The life tenants did not represent the remainder-men and could do nothing to bar their estate. The court held that the partition was of the life estates only, and that the deeds of life tenants purporting to convey the fee conveyed nothing but life estates. That holding was correct.

An important question raised by other assignments of error relates to the fee in the share of Elizabeth Powers and the contingent remainder limited after her life estate. There were no heirs of her body, so that the devise of the remainder failed, and the question is where the fee was during her lifetime. This is important in determining the effect of deeds by life tenants purporting to convey the fee. The court, approving the finding of the master, in effect held that until the death of Elizabeth Powers without heirs of her body the fee was in abeyance. The court found that the share of the real estate in which she had a life estate reverted and returned upon her death to the estate of James Jackson, the testator, and became vested in his heirs at that time, to be distributed to them under the law, and that at the time of conveyances by the life tenants they had no interest except that of life tenants. George Jackson, Joseph Jackson and Rachel Taylor each had children living at the death of the testator, and the remainder in fee in their shares vested in such children, but there was no one in being capable of taking the remainder in the share devised to Elizabeth Powers. If that remainder descended as intestate estate and vested in the heirs to await the happening of the contingency, the interest of each one would pass to his or her assigns, subject to be divested if the contingency should happen. It never did happen, and the fee would remain in their heirs or assigns. Although it was the subject of contention, it was generally held, in

case of a conveyance at the common law, that the whole estate passed out of the grantor, and in the case of a contingent remainder was in abeyance until the happening of the contingency. Livery of seizin was an evidence or testimonial of the passing of the thing from the one who made the livery. This manner of conveyance transmitted all present estate and barred both present and future rights and possibilities. The rule is stated in Sheppard's Touchstone (p. 210): "If, therefore, one make a lease for life to I. S., the remainder to the right heirs of I. D., (which I. D. is then living,) and give livery of seizin according to the deed; in this case, albeit he in remainder be not capable of this remainder, yet by the livery it shall pass .out of the feoffor and shall be in abeyance during the life of I. S. So is the current of authorities; but Mr. Fearne (Butler's Fearne, p. 285,) is inclined to think the fee remained in the feoffor till it can vest under the remainder." In Williams on Real Property (p. 266) the author explains that when contingent remainders began to be allowed the judges could not make.up their minds to infringe on the ancient rule that the fee simple must, on every feoffment which confers an estate in fee, at once depart out of the feoffor, and they therefore sagely reconciled the rule by affirming that during the contingency the inheritance was either in abeyance, or *in gremio legis,* or else *in nubibus.* But he says: "Modern lawyers, however, venture to assert that what the grantor has not disposed of must remain in him, and cannot pass from him until there exists some grantee to receive it. And when the gift is by way of use under the Statute of Uses, there is no doubt that, until the contingency occurs, the use, and with it the inheritance, result to the grantor. So in the case of a will, the inheritance, until the contingency happens, descends to the heir of the testator." The doctrine that the fee was in abeyance prevailed only in conveyances at the common law, and not in dispositions by will. Blackstone

recognized the rule that a fee might be in abeyance in the case of a grant, but in a note it is said: "Mr. Fearne produces authorities which prove, beyond controversy, 'that where a remainder of inheritance is limited in contingency by way of use or by devise, the inheritance in the meantime, if not otherwise disposed of, remains in the grantor and his heirs, or in the heirs of the testator, until the contingency happens to take it out of them.'" In Kent's Commentaries (vol. 4, p. 257,) the author says: "If a contingent remainder be created in conveyances by way of use or in dispositions by will, the inheritance, in the meantime, if not otherwise disposed of, remains in the grantor or his heirs, or descends to the heirs of the testator, to remain until the contingency happens. This general and equitable principle is of acknowledged authority. * * * It was fully and definitely settled by Lord Parker, on appeal from the rolls in *Carter* v. *Barnadiston*, that the inheritance descends to the heir in the case of a contingent remainder created by will, to await the happening of the contingency."

Where a contingent remainder is devised the fee descends to the heir, and when the contingency happens the heir's estate opens to let in the remainder. The fee remains in the heirs of the devisor if the limitation is created by will. (2 Washburn on Real Prop. 263.) That rule has been applied in our decisions. In one case a testator made a devise to his three children equally, and after the death of either of them their share to be equally divided amongst their children or their descendants. The court said: "At the time of making the will, and when the devise of the life estate took effect by the death of the testator, the daughter, Sophronia, was unmarried, and there was no person in existence to take the remainder under the will. According to the modern doctrine, there being no person *in esse* to take, the remainder vested, upon the death of the testator, in his heirs-at-law, subject to be divested when the will became operative as to

such remainder." (*Bates* v. *Gillett*, 132 Ill. 287.) In *Harrison* v. *Weatherby*, 180 Ill. 418, a material question was where the fee in lands in which there was a life estate vested upon the death of the testator. The appellants alleged in their bill that the fee remained in abeyance until the determination of the life estate of Mary A. Smith, and then descended to the heirs-at-law of Richard Smith, the testator. The court said: "The doctrine of the authorities is, that in such cases as this the fee title does not rest in abeyance during the continuance of the particular estate and before the birth of children, but that it vests in the heir-at-law *ad interim*, subject to be divested by the birth of persons who can take under the will. Having thus vested in the heir-at-law upon the death of the testator, it remains there unless divested by parties who can take under the will. When a devise is made giving a life estate to the testator's daughter and a contingent remainder in fee to her children not yet in being, and no other disposition is made of the fee, the fee descends to the testator's heirs as intestate property, and it so remains as a vested estate in fee simple until the contingency happens. The heirs in such a case take the estate subject to the condition of being divested on the contingent remainder-men coming into being." It was further held that when the testator creates a life estate and then disposes of a fee by a contingent remainder which fails, the fee goes as intestate property to the testator's heirs-at-law,—not to those who are the heirs-at-law at the time of the death of the life tenant, but to those who are heirs at the time of the death of the testator. Contrary expressions of opinion in *Madison* v. *Larmon*, 170 Ill. 65, were overruled.

Counsel for defendants in error relies upon the decision in *Frazer* v. *Supervisors of Peoria County*, 74 Ill. 282, to sustain his claim that the fee was in abeyance. It would be a sufficient answer to say that the doctrine of abeyance contended for was limited to cases of grants

and was never applied in the case of a will, and the question in that case arose under a conveyance. There was a deed to an unmarried woman and the heirs of her body. She was afterward married, and, with her husband, reconveyed the premises to the grantor. The question was whether her re-conveyance cut off the contingent remainder, and it was correctly held that it did not. The original owner, after the re-conveyance, deeded the premises to the board of supervisors of Peoria county, and it was decided that the board did not have a perfect, absolute and indefeasible estate of inheritance in the land in fee simple because there was a contingent remainder in the premises. There was, therefore, a breach of the covenant of the board that it had such title in its conveyance to Frazer. Whether the observations in that case respecting the fee being in abeyance were correct or not, the decision is not authority respecting a devise under a will.

The court erred in holding that the fee in the share in which Elizabeth Powers had a life estate reverted at her death to the heirs of the testator. The deeds of heirs conveyed their interest in such share, and while such interest would have been divested upon the happening of the contingency, it never did happen, and the title was never divested.

There is a contest as to the title to the south half of the north-west quarter of section 23 mentioned in the will. This land was set off to Joseph Jackson in the partition between the life tenants. He conveyed it by quit-claim deed January 26, 1878, to Samuel M. Adams, who conveyed it December 8, 1880, to Thomas Wickham. After the death of Thomas Wickham it passed to the defendant Ella Wickham. She claims title to the tract in fee simple by a chain of conveyances from the government. John D. Abbott had the government title and is the common source of title of the parties. The testator claimed title by conveyance from that source, and was in possession

from the year 1857 to his death. The defendant Ella Wickham claims through a deed from the said John D. Abbott, by his attorney in fact, to William M. O'Hara, prior in date to the conveyance through which the testator claimed. The next link in her chain of title is a quitclaim deed from Abram D. Harrell and Helen O'Hara Harrell, his wife, to George A. Kibbe, of all lands of the grantors in the State of Illinois, dated May 2, 1868. This deed recited that Helen O'Hara Harrell was the daughter and only heir-at-law of said William M. O'Hara. Joseph Jackson, who was in possession under his father's will, bought in this Kibbe title, and afterward conveyed, as before stated, to Samuel M. Adams. Whether the statement of Helen O'Hara Harrell in her deed that she was the daughter and only heir-at-law of William M. O'Hara was competent and sufficient to prove his death and her heirship or not, we are of the opinion that the title of James Jackson had become good, under the Statute of Limitations, by possession and payment of taxes for seven successive years. Furthermore, the evidence is that Joseph Jackson bought in the title with funds of the estate of James Jackson to protect the title, and in equity his purchase would inure to the benefit of parties claiming under the will.

As to all the lands except the above mentioned tract it was admitted by the pleadings and by stipulation that James Jackson was in possession and owned the same at his death. One tract, however, was not correctly described, but it passed to the devisees under the will by virtue of its general language. The devise was as follows: "I give and bequeath the balance of my real estate in the county of Stark, aforesaid," followed by the particular description. The plain import of the will was to devise all the balance of his real estate in the county of Stark. The tract which was misdescribed was a part of his real estate and in the county of Stark. It was devised by the will. The court could not reform the will,

but was correct in holding that the land in question passed by virtue of it.

In determining the issue raised by the defendants who set up and relied upon the Statute of Limitations, the court found that the life estates in all lands terminated at the death of Joseph Jackson, the last of the life tenants, on November 17, 1898, and held that those entitled to the remainder in the lands had no right of entry, and the Statute of Limitations could not begin to run against them as to any of the lands until his death. A conveyance by a life tenant to a third person, by words that purport to convey the fee, will not make the possession of the purchaser adverse to the remainder-men during the continuance of the life estate. (*Mettler* v. *Miller*, 129 Ill. 630.) The statute will not begin to run against a remainder-man in favor of one holding under a life tenant until the termination of the life estate. The question in this case is whether, after the partition, the statute would begin to run as to a tract of land when the life estate in that tract terminated. The land was partitioned between the life tenants, and while that proceeding had no effect as to the remainder, the decree was binding and conclusive between the parties to it as to the life estates. After the decree the several life tenants took possession in accordance with it and held their life estates in severalty in the different tracts of land. After that time one life tenant had no life estate or interest in the tracts allotted in severalty to the other life tenants, and whenever one of them died the life estate in the lands allotted to him came to an end. Whenever the life estate in one tract of land came to an end the remainder-men became entitled to the estate in possession and had a right of entry. The right of entry as to one tract was not postponed until the death of some life tenant who had no life estate or interest in it. We do not see any reason why the Statute of Limitations should not begin to run as to a tract of land at the time of the termination of the life

estate in that tract.   The court erred in its findings and decree as to the Statute of Limitations.

These rules of law will be decisive, as we think, of all the questions argued in the case.

The decree is reversed and the cause is remanded to the circuit court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*