ISAAC A. BECHDOLDT

*v.*

JACOB P. BECHDOLDT *et al.*

*Opinion filed October 24, 1905.*

1. LIMITATIONS—*statute. does not run against remainder-men during term of preceding estate.* The Statute of Limitations does not begin to run against remainder-men until the preceding estate to which the remainder is subject has terminated.

2. HOMESTEAD—*homestead estate under act of 1857 was a mere exemption.* Under the act of 1857 the homestead right was but the exemption from judicial sale of the lot of ground and the building thereon occupied as a residence to the value of $1000, but was not an estate of inheritance nor one that the householder could convey.

3. SAME—*decree construed as vesting a homestead estate.* A decree in a partition proceeding by the heirs of a deceased land owner against the grantee in a quit-claim deed, made by the widow of the deceased and her then husband, purporting to convey all the land of which the deceased died seized, which decree assigns and sets off to the defendant certain land "as his homestead in lieu of all other claims he may have in and to all of said lands," gives the defendant an estate in the land so assigned for his own life, and at his death a right of action to recover possession at once accrues to the heirs of the deceased land owner and the Statute of Limitations begins to run.

APPEAL from the Circuit Court of Pike county; the Hon. HARRY HIGBEE, Judge, presiding.

A. G. CRAWFORD, and J. W. STAUFFER, for appellant.

WILLIAMS & WILLIAMS, and PAUL F. GROTE, for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

On the 12th day of October, 1904, the appellant, and all of the appellees except William Johnson, filed their bill in chancery in the circuit court of Pike county, in which they alleged that they were the heirs of Frederick C. Bechdoldt, deceased, and as such heirs were seized in fee, as tenants in

common, of the title to fifty-five acres of land in Pike county, specifically described in the bill, and prayed for a decree partitioning and allotting the same to them in severalty. The appellee William Johnson was made a defendant to the bill and filed his answer thereto. On a hearing the bill was dismissed for want of equity, and this appeal has been prosecuted by one, only, of the complainants in the bill, the other complainants being joined as appellees.

The answer of William Johnson averred that he purchased the land in the bill described on December 7, 1882, at a sale made by the master in chancery of Pike county, by virtue of a decree entered in a partition suit instituted between the heirs of one John Knox, deceased, which proceeding resulted in a decree ordering the premises to be sold, the premises being so situate that they could not be partitioned; that the decree found and recited that the said John Knox was at the time of his death the owner in fee simple of the title to said premises, and that no other person or persons had any interest or title in or to the said lands, or any part thereof, in possession, remainder, reversion or otherwise; that he complied with the terms of the sale of said land, and on the 25th day of January, 1883, received a deed from the said master conveying the same to him; that on that day he entered into possession as the owner thereof and made thereon the actual residence of himself and his family, of which he was the head, believing in good faith that he was possessed of the sole title to the premises; that he retained the actual, open, adverse, undisturbed and exclusive possession of the same, claiming, as aforesaid, to be the owner thereof, living thereon with his family as his residence for a period of more than twenty years prior to the filing of the bill against him. He invoked the defense of the provisions of section 1 of chapter 83, entitled "Limitations," (2 Starr & Cur. Stat. p. 2599,) limiting the period within which an action for the recovery of lands could, under such circumstances, be brought, to twenty years, and also invoked the

benefit of the provisions of sections 4 and 6 of the same chapter.

Sections 4 and 6 are as follows:

"Sec. 4. Actions brought for the recovery of any land, tenements or hereditaments of which any person may be possessed by actual residence thereon for seven successive years, having a connected title in law or equity, deducible of record, from this State or the United States, or from any public officer or other person authorized by the laws of this State to sell such land for the non-payment of taxes, or from any sheriff, marshal or other person authorized to sell such land on execution, or under any order, judgment or decree of any court of record, shall be brought within seven years next after possession being taken, as aforesaid; but when the possessor shall acquire such title after taking such possession, the limitation shall begin to run from the time of acquiring title.

"Sec. 6. Every person·in the actual possession of lands or tenements, under claim and color of title, made in good faith, and who shall, for seven successive years, continue in such possession, and shall also, during said time, pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements to the extent and according to the purport of his or her paper title. All persons holding under such possession, by purchase, devise or descent, before said seven years shall have expired, and who shall continue such possession, and continue to pay the taxes as aforesaid so as to complete the possession and payment of taxes for the term aforesaid, shall be entitled to the benefit of this section."

On the hearing it was proven, without dispute, that said William Johnson received a deed from the said master in chancery on the 25th day of January, 1883, made in pursuance of a sale under said decree in the partition suit between the heirs of John Knox, deceased, conveying to him said lands, and that he on the same day entered into posses-

sion thereof as the owner and lived thereon with his family, claiming to be the owner thereof, and holding the open, actual, adverse, undisputed and exclusive possession thereof from thence forward, and was still so residing on and in the possession of the land on the 12th day of October, 1904, when this suit was instituted against him.

The chancellor sustained the defense of said Johnson and dismissed the bill. The appellant, however, contends that the complainants in the bill became seized of the fee in remainder in said lands on January 10, 1863, subject to a precedent estate for and during the life of one Louisa Bechdoldt, their mother; that said Louisa survived until June, 1903, and then died, and that until the death of the said Louisa they were not entitled to make entry upon said land or to bring any action to recover the possession thereof, and that they brought the action within but little more than one year after the legal right to make entry or bring an action for the possession of said land accrued to them. The statutes of limitation sought to be invoked by the appellee John-. son do not have operation against a remainder-man until the death of the life tenant. *Peterson* v. *Jackson,* 196 Ill. 40; *Turner* v. *Hause,* 199 id. 464.

The contention of the appellant is based on the following state of facts: The lands in question, together with other lands not here involved, on the 10th day of July, 1863, belonged to one Frederick C. Bechdoldt, who departed this life on that day. He was the head of a family and resided with the same on the lands here involved. He left surviving him Louisa, his widow, and certain children. The title to the lands descended to such children, subject to the dower and homestead rights of said widow. The widow continued to reside on the lands with her children, as the head of a family, and intermarried with one Albert Forkner, and on the 25th day of February, 1864, together with Forkner, her then husband, executed and delivered to John Knox a quit-claim deed purporting to convey to the said Knox all the lands of

which her former husband died seized, including the fifty-five acres involved in this litigation and about one hundred and eighty or one hundred and ninety acres of other land. Mr. and Mrs. Forkner removed to the State of California, taking the family with them, and made their permanent home in that State. John Knox then entered into possession of the land and continued to occupy the same as his homestead.

In 1871 the adult heirs of the said Frederick C. Bechdoldt filed their bill in chancery in said Pike county circuit court against the minor heirs, for a decree allotting and setting apart to them, in severalty, their respective interests in and to the lands of which the said Frederick C. died seized. John Knox was made a party defendant to the bill. In 1874 a decree was entered in the cause, which, after finding and reciting the death of Frederick C., that the parties, except said John Knox, were his heirs and owned the land of which he had died seized, as tenants in common, recited and found "that he [said Forkner] and the said Louisa, in the year, to-wit, on the 25th day of February, 1864, by quit-claim deed conveyed the said land to said John Knox, said defendant, who soon thereafter moved upon said land and has from thence continued to occupy the same as his homestead; * * * that the said John Knox has by his said purchase succeeded to the homestead rights of said Louisa, the said widow, and that said Louisa is not entitled to dower therein," and ordered and decreed that certain named persons be appointed commissioners "to go upon the said land and first assign to said John Knox his homestead therein, including the dwelling house, not to exceed in value $1000, by metes and bounds, and that they make division and partition of the residue of said lands according to the interest of the respective parties, as follows:" An oath was administered to the said commissioners requiring them to "go upon the land described in the order appointing us and assign to John Knox his homestead thereon." The commissioners reported "that

we went upon said land and that we set off and assigned to John Knox, as his homestead, the following lands, to-wit," (here follows the description of the lands involved in the suit at bar,) "and we find the residue of the lands so circumstanced that they could not be divided." The report of the commissioners was approved, the lands not here involved being ordered sold, and as to the lands here involved the court decreed as follows: "That the lands set off to said John Knox as his homestead, to-wit, [here follows description,] be and they are hereby assigned to said Knox as his homestead in said lands in lieu of all other claims he may have in and to all of said lands."

John Knox resided with his family on the lands so set off to him until January 29, 1879, at which date he died. He left children him surviving, but no widow. The appellee William Johnson intermarried with Margaret, a daughter of said Knox, and on the 5th day of October, 1881, said Margaret and her husband, the appellee Johnson, filed a bill in chancery in the circuit court of Pike county against the other heirs of said John Knox for a decree partitioning among the heirs of said John Knox, deceased, the real estate of which he died seized. This bill for partition alleged that said John Knox died seized of the title in fee simple to one hundred and ninety-eight and one-half acres of land, consisting of different tracts described in the bill, among such tracts being the fifty-five acres involved in the suit at bar. A decree was entered finding that the premises were not susceptible of partition and ordering that they be sold by the master. The lands were duly sold by the master, and the appellee Johnson became the purchaser of all of the tracts, including those here involved. He received a deed for all of the tracts so purchased on January 25, 1883, and then entered into possession as owner, residing thereon with his family, and remained, as before stated, in absolute, open, actual, adverse and undisturbed possession from thence, and still is in possession. His right of possession or title was never ques-

tioned until the bill under consideration was filed,—a period of more than twenty years. The decree under which he bought declared that John Knox, deceased, was seized of the title in fee to the lands, and that no person or persons other than the heirs of said John Knox had any interest, right or title in them or any right therein, in possession, reversion or remainder. Johnson bought the land from the master under the decree and in the actual belief that he would receive the absolute title in fee simple. His possession has been in good faith as being the real owner, and in that faith and belief he had resided upon the land as the home of himself and his family for more than twenty years when this suit was brought against him.

The appellant contends that no other construction can be put upon the decree entered by the circuit court of Pike county in the case of the Bechdoldt heirs against John Knox, than that it assigned the lands here in controversy to said John Knox as a homestead for and during the life of Mrs. Forkner, formerly Mrs. Bechdoldt. He seems to concede that such a ruling would have been erroneous, but insists that all of the parties complainant in the case at bar were bound by that decree, either as parties or privies, and after its rendition were possessed of an estate in remainder in the lands so assigned as a homestead, the precedent estate therein being an estate for the life of said Louisa M. Forkner, and that they had neither right of entry nor right to maintain an action until the expiration of the life estate,—that is, until the death of Louisa M. Forkner. We do not think the decree in the case of the Bechdoldt heirs against John Knox is to be so construed. Under the act of 1857, which was in force at the time of the death of said Frederick C. Bechdoldt, the homestead right of the householder was but the exemption from judicial sale of the lot of ground, and the building thereon occupied as a residence, to the value of $1000. The act provided that the exemption should continue for the benefit of the widow and family of the house-

holder, some one of them continuing to occupy such homestead until the youngest child should become twenty-one years of age and until the death of the widow.

The pleadings and all papers in the case of the Bechdoldt heirs against John Knox, as shown by stipulation of the respective parties, have become lost and mislaid and could not be produced in proof. What interest, right or equities John Knox claimed in all the lands of which Frederick C. Bechdoldt died seized does not appear, his answer having been lost. He had a deed purporting to convey him all of the lands owned by Frederick C. Bechdoldt, and he had possession of such lands for about ten years when the decree was rendered, and it is clear from the decree that he set up some claims or rights or equities in and to all of the lands of which Frederick C. Bechdoldt died seized and that the court considered and adjusted said claims. The records of the court contained the decree in the case, the oath and report of the commissioners and the order of the court approving the same. The decree recites that within about one year after the death of the said Frederick C. Bechdoldt, his widow, Louisa, who had continued to live in the family residence of her deceased husband, married Albert Forkner, and that she and her said husband executed a quit-claim deed purporting to convey all of the lands of which her former husband died seized, to John Knox, and that John Knox then took possession of the land, and, to quote the words of the decree, "has from thence continued to occupy the same as his homestead." The court found that the effect of the acts and deed made by the widow was to extinguish her dower and to entitle the said John Knox to succeed to the homestead rights of said Louisa. The court knew that John Knox had then been living upon the land, claiming the right to occupy it all, for near ten years before the rendition of the decree. It seems to be clear, therefore, that John Knox was claiming that he had become entitled to a homestead right in himself in all the land; and that he was also claiming

other rights in the land clearly appears from the decree of the court approving the report of the commissioners assigning to John Knox the premises here in controversy "as his homestead." In that order of approval the court adjudged and decreed that said tracts of land "be and they are hereby assigned to said John Knox as his homestead in said land, in lieu of all other claims he may have in and to all of said lands." It is plain that it was the intent of the chancellor to adjust all of the claims which said Knox asserted by reason of his conveyance from the widow, his occupancy of the land as a homestead of his own, improvements, if any, that he had made upon the land, and taxes paid, if any, during the ten years he had occupied the land, by decreeing to him a homestead interest of his own in the land. This view is further manifested by the directions given to the commissioners in the decree, viz., "to go upon the said land and first assign to John Knox his homestead, including the dwelling house, not to exceed in value $1000." The oath taken by the commissioners proceeded upon the same theory. They were sworn "to go upon the land and assign to John Knox his homestead therein." They reported that they had gone upon the land and had "set off and assigned to John Knox, as his homestead," the said land. The order of the court approving the report of the commissioners further evidences the correctness of this view. It decrees that "the lands set off to said John Knox as his homestead, to-wit, [describing the fifty-five acres here involved,] be and the same are assigned to said John Knox as his homestead, in lieu of all other claims he may have in and to all of said lands." In no part of the decree in which reference is made to this homestead do we find any expression indicating any other intent than that of establishing an interest in John Knox in the nature of a homestead right in him, and that not only because he had succeeded to the homestead rights of Louisa and to be measured by her life, but "in lieu of all other claims he may have in and to all of said lands." If the court

had intended to say that the homestead declared and assigned by the decree was that to which Louisa would have been entitled had she not sold and abandoned the same and that Knox should be entitled to enjoy Louisa's right of homestead, the decree could have been readily framed so as to express that intent; but the decree seems to have been constructed with an evident purpose to establish in John Knox a homestead of his own in the lands, in lieu of all other claims he was asserting to the land.

An interest in land for the life of another person is esteemed of less value than if for one's own life. (4 Kent's Com. p. *26.) The court, it seems plain, intended that the interest designed to be established by the decree in favor of Knox should be more than merely the enjoyment of the right to occupy the land during the lifetime of Louisa, the widow, for the reason that that which the court gave him expressly declared it to be in lieu of all of his claims to all of the land. The court, therefore, intended to give him an interest or right of occupancy which should be available to him during all of his lifetime, of which he should not be deprived so long as he should live, by the death of another. Years before the rendition of the decree, Louisa, the widow, had re-married and removed with her husband and her children to California, and had lost all right to have a homestead assigned to her, and the intention disclosed by the decree was to invest Knox with the right to occupy the premises to be assigned to him as a homestead so long as he should live and should continue to occupy the same, which might be lost or abandoned by him and would be extinguished at his death. It was not to be a descendible estate of inheritance, nor one which he could transfer or convey to another, as is to be clearly inferred by the designation of the interest as a homestead, such being an incident of the homestead right as it then existed.

The interest or right which inured to John Knox by virtue of said decree became extinguished at his death, and

the right to maintain an action to recover the lands then arose and accrued to the appellant and the other heirs of the said Frederick C. Bechdoldt, deceased. This right of action became barred by the Statute of Limitations invoked by the appellee Johnson before the institution of the proceeding in chancery against him. The trial court therefore properly dismissed the bill, and that decree must be and is affirmed.

*Decree affirmed.*