GRAFF et al. v. RANKIN et al.

(Circuit Court of Appeals, Seventh Circuit. April 10, 1917. Rehearing Denied January 31, 1918.)

No. 2404.

1. WILLS ⚖=634(8)—CONSTRUCTION—VESTED OR CONTINGENT REMAINDER.

A testator devised land to a daughter, then unmarried, and her lawful issue. In case of her marriage he requested that she and her husband should lease or make such other disposition of the land as would produce the most certain and largest income, which he directed should be applied to the education and support of their children and of themselves during the natural life of the daughter, at her death the property "to be equally distributed among her lawful issue and the legal representative of any of her children that may have previously died, to be entitled to the same share that his or her parent would have been if then living." If the daughter should die "without leaving any lawful issue," the land should descend to and be equally divided among her brothers and sisters and their lawful issue. *Held*, that the children of the daughter took no vested interest in the remainder at their birth; the remainder not being to her children, but directly to her "lawful issue" living at the time of her death, subject to the further limitation that grandchildren together took the share of a deceased parent, and that until the time of her death it was contingent.

2. GUARDIAN AND WARD ⚖=79—PROPERTY SUBJECT TO SALE—CONTINGENT INTEREST.

Under the law of Illinois, as established by decision, a contingent interest in land is not subject to transfer, either at private or at guardian's sale.

3. REMAINDERS ⚖=16—SALE OF PROPERTY UNDER ORDER OF COURT.

A court of equity has power in a proper proceeding to order the sale of real estate, where it appears that unless such action is taken the property will be lost both to life tenant and remainderman, and to extinguish all interests therein, whether vested or contingent, and in Illinois persons then in being and properly before the court will be deemed to represent

the interests of those unborn members of the class whose interests are similar to theirs.

4. GUARDIAN AND WARD ⊜111—SALE OF PROPERTY UNDER ORDER OF COURT—INTEREST CONVEYED.

A guardian, as such, brought a suit in a chancery court of Illinois, asking that land in which his ward had a contingent interest in remainder and also an equitable interest in the life estate, which was in her mother, be sold, and the proceeds reinvested where it would be more beneficial to the ward. The ward was alone made defendant, and answered by a guardian ad litem. A sale was decreed, and the guardian was directed to report reinvestments to the probate court. *Held*, that the only interests which the court had jurisdiction to sell in such proceeding were those of the ward, and that since, under the law of the state, a contingent interest was not subject to sale, the purchaser took only the ward's equitable interest in the life estate, given her by the will of her grandfather, and which terminated with the life estate.

5. ADVERSE POSSESSION ⊜77—TITLE OR INTEREST ACQUIRED.

The deed made pursuant to such decree, however, which purported to convey the entire interest, gave the grantee color of title, and, when followed by exclusive possession and payment of taxes for more than 20 years, divested the estate of the life tenant; but, under the law of the state, limitation did not begin to run against the contingent remaindermen until the death of the life tenant.

6. GUARDIAN AND WARD ⊜108—SALE OF PROPERTY—TITLE OR INTEREST ACQUIRED—CONTINGENT REMAINDERMEN—NOTICE OF RIGHTS.

Notwithstanding the fact that the will of the record owner of the land, under which all interests were derived, was not properly recorded in the county where the land was situated, the grantee in the deed was chargeable with notice of its provisions, where the deed recited the decree, and both the decree and the petition on which it was based clearly referred to the will and its place of probate.

7. GUARDIAN AND WARD ⊜88—SALE OF PROPERTY—INTERESTS ACQUIRED—CONTINGENT REMAINDERMEN.

In the proceeding by the guardian, the court acquired jurisdiction only to sell the minor's interest, and could not, as it did not purport to, give a construction to the will on which the purchaser had a right to rely.

Appeal from the District Court of the United States for the Northern Division of the Southern District of Illinois.

Suit in equity by Minnie A. Rankin and Alexander C. Rankin against Charles Frederick Graff and Emily B. Graff. Decree for complainants, and defendants appeal. Reversed.

Certiorari denied, 247 U. S. ——, 38 Sup. Ct. 578, 62 L. Ed. ——.

Logan Hay, of Springfield, Ill., and Fred H. Hand, of Cambridge, Ill., for appellants.

Wm. J. Graham, of Aledo, Ill., and Charles J. Scofield, of Carthage, Ill., for appellees.

Before BAKER, MACK, and EVANS, Circuit Judges.

MACK, Circuit Judge. This is an appeal from the decree of the District Court quieting and confirming the title of the complainants, Alexander C. Rankin and his wife, Minnie A. Rankin, to certain lands in Mercer county, Ill., as against the claims of the defendants, Charles Frederick Graff, his wife, Emily B. Graff, and Wilbur F. Gilder, husband and sole devisee of Netta Graff Gilder, deceased, and dismissing

for want of equity the cross-bill of defendant Charles F. Graff for possession and accounting.

Romulus Riggs the testator, died in the fall of 1846, seised of the land in controversy. He devised it by the sixth section of his will, which reads as follows:

"I give and devise to my daughter, Illinois Riggs, and to her lawful issue for their only proper use and benefit the following described thirteen quarter sections of land with the appurtenances thereunto belonging, containing one hundred and sixty acres each, more or less. The said lands lying and being in Mercer county and state of Illinois as follows, to wit: N. E. ¼, 23, 14 north, 3 west [and describing 12 other quarters]. If my daughter, Illinois Riggs, should marry and have lawful issue I request that her lawful husband whomsoever he may be will act in conjunction with his wife, my daughter, Illinois, as the agent and guardian of their children and that they will lease out or make such other disposition of the said thirteen quarter sections of land as will produce the most certain and largest income, which income it is my will and direction shall be applied to the education and support of their children and to the support of themselves during the natural life of my said daughter, Illinois, and at her death it is my direction that as many of their children as shall be twenty-one years of age or if they be daughters and married before that time then at eighteen years of age they shall at once receive their equal proportion of said property, and their lawful father, my son-in-law, whomsoever he may be, if then living, shall continue to receive and control the income from the balance of the property for the sole use and benefit of such of my daughter, Illinois' children as may be under lawful age at their mother's death, and shall deliver to each child his or her equal proportion of the same so soon as they become twenty-one years of age, or if there shall be daughters and they are married before that time then they are to receive their proportion at eighteen years of age, so that at the time the youngest child of my daughter, Illinois, shall be of lawful age, the property and income from the same will be equally divided among them and their lawful father, my son-in-law, whomsoever he may be, will be fully discharged from guardianship and have no further control or interest in the same. Nevertheless, if any or all of my daughter Illinois' children should arrive at lawful age before her death, the property is not to be divided among them during her lifetime, but to remain with her and her husband for their mutual use and benefit of them all until her death when it is to be equally distributed among her lawful issue and the legal representative of any of her children that may have previously died, to be entitled to the same share that his or her parent would have been if then living. If, however, my said daughter, Illinois Riggs should die without leaving any lawful issue, then I direct that the above described thirteen quarter sections of land with the appurtenances shall at her death descend to and be equally divided among her brothers and sisters and their lawful issue, in the same manner as they would have descended to her issue had she left any."

His will was duly probated at testator's domicile in the county of Philadelphia, state of Pennsylvania, and was recorded in Adams county and Mercer county, Ill., in 1849 and 1874, respectively, but before the commencement of this suit the necessary statutory certificate of probate had not been filed for record.

Illinois Riggs, to whom the testator's Mercer county lands were devised, was a spinster at the time of his death. In March, 1847, she married Charles H. Graff. In 1848 a daughter was born to them. On July 29, 1853, Charles H. Graff was appointed by the county court of Peoria county, Ill., guardian of his minor daughter, Netta. On August 2, 1853, he filed on the chancery side of the circuit court of Mercer county a petition to sell real estate, reciting the execution and probate

in Philadelphia of the will of Romulus Riggs, the substance of the sixth clause, the petitioner's marriage to Illinois, the birth of their child, Netta, her minority, and his appointment as her guardian by the county court of Peoria, Ill. He further alleged that Netta had no property of any kind applicable to her education and support as contemplated by the will of the testator, that the taxes upon the land were heavy, that the lands, being wild and uncultivated, produced no income whatever, and that no money was thus received to preserve them from waste. The petitioner thereupon charged and prayed that the proceeds of the sale thereof be invested in such manner that a yearly income could be derived therefrom, to be applied towards the education and support of Netta Graff, that Netta Graff be made a party to the proceedings, and that a guardian ad litem be appointed. Affidavit of her nonresidence was duly filed; a decree was entered at the April term, 1854, which, after reciting due notice to the defendant of the pendency of the suit, appointed a guardian ad litem; and thereupon, after further reciting the filing of an answer by him, the decree found the facts as set out in the petition, and ordered the property to be sold by a commissioner and deeds to be executed by him to the purchasers. Pursuant to this decree, the land was sold and conveyed to one Thomas Morehead, by deed dated and recorded in June, 1854. This commissioner's deed recited the decree in hæc verba. By mesne conveyances the property came to the complainant, Alexander C. Rankin; he and those under whom he claimed have held possession thereof in good faith and regularly paid the taxes thereon since 1854.

Netta Graff, who had married Wilbur F. Gilder, died in 1897, without having had a child born to her. Her husband, the sole beneficiary under her will, was a party defendant to these proceedings, but disclaimed any interest and did not join in this appeal. Charles Frederick Graff, the other and younger child of Illinois, the principal defendant herein, was born in 1862. It was to quiet and establish their title, as against his threatened ejectment action, that the complainants brought their bill in March, 1913. To the amended bill, filed in October, 1915, defendants filed their answer, including a cross-complaint.

Plaintiffs contend: First, that Morehead, their remote grantor, secured a valid title to the property in controversy by virtue of the proceedings in the circuit court of Mercer county in 1853; second, that, if the legal title were not transferred as the result of such proceedings, they nevertheless acquired title under both sections 1 and 6 of the limitation act (Illinois Revised Statutes, c. 83); third, that, in any event, the defendant Charles Frederick Graff is debarred by his laches, and is estopped from asserting any rights, in view of his own delay and plaintiffs' erection of valuable improvements upon the land in the honest belief of ownership. The defendants, denying plaintiffs' contention, seek possession by their counterclaim.

If the estate limited to the children of Illinois by the will of her father, Romulus Riggs, vested in each at its birth, rather than at the death of Illinois, Netta's vested interest was subject to a decree of sale on petition to the proper court in order to provide for her education and support, and, if the commissioner's sale was thus made, the pur-

chaser acquired that vested interest. Since the remainder, if vested, was subject to open to let in her brother subsequently born, the interest thus sold would be an undivided half of the remainder, subject to Illinois' life estate. If, however, the remainder was contingent, then in Illinois it was not subject to transfer either at private or at guardian's sale, and in that event, subject only to the question hereinafter considered as to whether the Mercer county proceedings were for a guardian's sale, the commissioner's deed conveyed no title to Morehead.

[1] 1. We therefore consider, in the first place, the nature of the interest acquired by the children of Illinois under the will. The direct devise to Illinois Riggs and her lawful issue is limited and explained by the subsequent provisions. Concededly, Illinois obtained only the legal life interest, subject to an equitable charge on the income for the support and education of her children and for the support of herself and her husband. Concededly, too, the provision, authorizing Illinois and her husband to "lease or make such other disposition of the said thirteen quarter sections of land as will produce the most certain and largest income," did not empower them to sell the fee.

To support their contention that the interest of the children, other than their equitable interest in the life estate, is but a contingent remainder, defendants urge certain clauses of the will, which they contend indicate that the testator's scheme for the division of his estate contemplated that his grandchildren's interest should be contingent upon their surviving their mother. They further contend that the Illinois court has in past decisions placed such a construction upon similar expressions that these words have obtained in Illinois property law a primary meaning, which the courts should apply, in the absence of an express contrary intention or other strong counterbalancing considerations. The important clauses are those providing that at Illinois' death the property "is to be equally distributed among her lawful issue and the legal representatives of any of her children that may have previously died, to be entitled to the same share that his or her parent would have been if then living." Legal representatives, in the light of the context, clearly refers to the grandchildren of Illinois. "If, however, * * * Illinois should die without leaving any lawful issue, then * * * the land * * * shall at her death descend to and be equally divided among her brothers and sisters and their lawful issue."

The remainder is not, as in Lackenmyer v. Gehlbach, 266 Ill. 11, 107 N. E. 202, to the children of Illinois with a gift over, in case any child die in her lifetime, to the children or legal representatives of such child; it is directly to "her lawful issue," with the further limitation that grandchildren together take a deceased child's share. The gift to the issue, including such grandchildren, is, however, expressed as direct, not as substitutional; the remainder is not to children, subject to be divested, in case of a child's death, in favor of that child's children, but to lawful issue. Clearly, however, all descendants do not take at birth; it is not a gift to the class of descendants. Furthermore, the remainder is not to "lawful issue and legal representatives" of deceased children; this clause as to the legal representatives merely describes the extent of their interest, a child's share—in other words,

a direction that the division is to be per stirpes among her lawful issue. But among which of the lawful issue, if issue is not the whole class of descendants? Clearly only such children as survive Illinois and the descendants surviving her of deceased children.

Even in the case of a direct remainder to children, with a gift over to the surviving issue in case a child die before the life tenant, the statement that the issue of the child so dying shall take the share which "the parent would have taken if living at her death" is deemed sufficient to indicate an intent that only such children and issue of deceased children as survive the life tenant shall take; the remainder is held contingent. People v. Byrd, 253 Ill. 223, 97 N. E. 293; Cummings v. Hamilton, 220 Ill. 480, 77 N. E. 264. See, however, People v. Carpenter, 264 Ill. 400, 106 N. E. 302, involving only personal property, in which the earlier cases were not cited, and these significant words not commented upon. If, as we believe, People v. Byrd is a correct statement of Illinois law, then a fortiori must the remainder to the lawful issue of Illinois, a direct, not a substitutional, remainder, both as to children and grandchildren, be deemed, in view of the subsequent clause, a remainder to such of Illinois' children as survive her and the descendants surviving her of such of them as may die in her lifetime; clearly a remainder subject to the condition precedent of surviving Illinois, and therefore contingent. Pitzer v. Morrison, 272 Ill. 291, 111 N. E. 1017, and McClintock v. Meehan, 273 Ill. 434, 113 N. E. 43, cited by plaintiffs, cast no doubt on this conclusion.

The gift over to Illinois' brothers and sisters tends to confirm this interpretation; it is not to take place in the event of Illinois dying without having had issue, the natural expression if the interests of Illinois' children vested upon their birth, but only in case Illinois dies without leaving any lawful issue. If the estates limited to the children of Illinois were held to be vested remainders, they would be divested by this clause in favor of Illinois' brothers and sisters, the testator's own children, only in case no descendant survived Illinois; but, if any one descendant survived her, then not only would that descendant have the entire disposition of his estate, but those children who died childless before her could have devised their vested interest to strangers. On the other hand, if, as we hold, the remainder to Illinois' children and their descendants is contingent, then on Illinois' death the property must go to the testator's own family—either to Illinois' descendants, if any survive her, or, if none, then to her brothers and sisters.

It follows, therefore, that Netta Graff, at the time of the sale of the land under the order of the circuit court of Mercer county, Ill., had only a contingent interest in the remainder.

[2] 2. If the proceedings in the Mercer county circuit court were merely a guardian's sale of the minor's estate, either by virtue of the statute or under the general power of a court of chancery over the property of minors, no interest in the remainder was thereby acquired, because, in the first place, that contingent interest never became vested in fact, and, in the second place, under Illinois law, a contingent interest is not the subject-matter of sale. Hill v. Hill, 264 Ill. 219, 227, 106 N. E. 262. At the best, the purchaser acquired Netta's equitable interest in the life estate, which expired at her death.

[3] But it is urged that the suit in chancery in the circuit court of Mercer county was more than a guardian's proceeding to sell his ward's property; that it was a suit to save all interests in the land, by a sale thereof and reinvestment of the proceeds. There can be no doubt of the power of a court of equity, in a proper proceeding, to order the sale of real estate when it is necessary for the preservation of the estate; and where it appears that, unless such action is taken, the property will be lost both to life tenant and remainderman, a court of equity may decree the sale of the real estate, so as to extinguish all interests therein, whether contingent or vested. Gavin v. Curtin, 171 Ill. 640, 49 N. E. 523, 40 L. R. A. 776; Balridge v. Coffey, 184 Ill. 73, 56 N. E. 411; Thompson v. Adams, 205 Ill. 552, 69 N. E. 1. It is further clear that in Illinois persons then in being and properly before the court will be deemed to represent the interests of those unborn members of the class whose interests are similar to theirs; and this, because they are not likely to suffer as long as all living persons similarly interested in the property are made parties to the suit. Hale v. Hale, 146 Ill. 227, 33 N. E. 858, 20 L. R. A. 247.

[4] Here, however, no attempt was made to extinguish all present interests in the property; neither Illinois, the legal life tenant, nor the heirs of Romulus Riggs, as owners of the reversion, subject only to the contingent remainder, were made parties defendant. Whether in Illinois, under such a proceeding, a vested remainder might be sold, so as to bind unborn members of the class, even if, for want of jurisdiction over the life tenant, the life estate is not divested, we need not determine; for we have held that Netta's interest in the remainder was contingent, not vested. And while if, in addition to the living representatives of the contingent interests, the owners of all vested legal interests were subject to the jurisdiction of the court, the land might be sold, and thereby the contingent remainders destroyed, just as at common law and in Illinois (Bond v. Moore, 236 Ill. 576, 86 N. E. 386, 19 L. R. A. [N. S.] 540) contingent remainders would be destroyed if the owners of the vested interests merged their titles, the court was as powerless as the contingent beneficiaries to effectuate a valid conveyance in Illinois of the contingent remainders as such.

Furthermore, however, it is perfectly clear, from every step in the proceedings, that no attempt was made to have the court do more than decree the sale of a minor's estate. The suit was brought by the guardian; as such, he had no legal or equitable interest in the property; as guardian, he could not properly have been the complainant in a suit to sell the entire property in order to save the interests of all concerned. The ward was the sole defendant; she was made such in her personal, and not in any representative, capacity. The decree provided that reports of reinvestment be made, not to the circuit, but to the county, court, and necessarily in the matter of the estate of the minor, Netta Graff. Hers was the sole interest attempted to be protected or disposed of; no provision was made or prayed for in the interest of any other parties, living or unborn. And, while the decree ordered the sale of the land, a purchaser thereunder could acquire at best only such interest therein as the court, under its jurisdiction over the per-

sons and subject-matter, could effectually direct to be sold. We conclude, therefore, that under these proceedings, nothing more than Netta's interest in the life estate could be passed to the purchaser.

[5] 3. The commissioner's deed, however, gave to the purchaser color of title to the entire property. He and his successors have paid all taxes, and have held open, notorious, exclusive, and adverse possession under claim and color of title, for more than 20 years. Clearly the legal life estate of Illinois was thereby divested, and with it necessarily the equitable charges thereon. And if the entire legal fee had been vested in Illinois, in trust for her issue, they as cestuis que trustent would have been barred, irrespective of the nature of their equitable interest. Waterman Hall v. Waterman, 220 Ill. 569, 77 N. E. 142.

But, in Illinois, both independently of and by virtue of section 3 of the limitation act (Revised Statutes, c. 83), to that extent limiting both sections 1 and 6 of that act, neither the 20 nor the 7 year period begins to run against a contingent remainderman until the expiration of the life estate; in this case, until the death of Illinois. Weigel v. Green, 218 Ill. 227, 75 N. E. 913. If Nelson v. Davidson, 160 Ill. 254, 43 N. E. 361, 31 L. R. A. 325, 52 Am. St. Rep. 338, though contrary to the implications both of earlier and later decisions, represents the present law of Illinois, its scope is not to be extended; the reason there assigned for holding that the statute of .limitations will begin to run against a vested remainder before the termination of the life estate, namely, that the vested remainderman might have protected himself by paying the taxes and is in default in not so doing, is entirely inapplicable to a contingent remainder.

[6] It is contended, however, that this limitation on the acquisition of title by adverse possession, whether common-law or statutory, is not applicable in favor of a remainderman, claiming under a will not properly recorded; that inasmuch as, against such a claimant, a bona fide purchaser of the property without actual or constructive notice of the rights under the will is protected under section 30 of the recording act (Hurd's Rev. St. 1917, c. 30), it is immaterial whether such purchaser acquires title from the heirs of the testator, or only color of title followed by adverse possession and payment of taxes for the statutory period. In support thereof, Dugan v. Follett, 100 Ill. 581 (followed by Lewis v. Barnhart, 145 U. S. 56, 12 Sup. Ct. 772, 36 L. Ed. 621, and Lewis v. Pleasants, 143 Ill. 271, 30 N. E. 323, 32 N. E. 384), is relied upon.

In Dugan v. Follett, several properties and conveyances were involved; the court did not distinguish between them. As to one of the properties, the case holds in effect that a purchaser, X., from A. and B., who do not appear in the record chain of title, and whose only legal right is under an unrecorded conveyance from the record owner granting a life estate to A., with remainder to B., C., and D., has good title, after the statutory limitation period has expired, as against C. and D., if at the time of purchase X. had neither actual nor constructive notice of C.'s and D.'s rights; further, that X. is not constructively charged with notice of the interests acquired by C. and D. under the unrecorded deed from the record owner by reason solely of the fact

that X. can trace his record title only through that deed. Whether this case and the Lewis Cases correctly represent the present law of Illinois on this subject, and whether the limitation period is of any moment in the determination of the issues, we need not inquire. See Weigel v. Green, 218 Ill. 227, 75 N. E. 913. For clearly the court did not determine, and did not intend to determine, that X. would not be chargeable with notice of the rights of C. and D., if in the deed to X. the grantors, A. and B., had recited the deed from the record owner to A., B., C., and D. in such a way as would have enabled X. to learn its provisions.

In the instant case, the deed of the commissioner, the decree of the court, and the petition on which it is based, all refer clearly and unequivocally to the will of the record owner, Romulus Riggs, as proven in the courts of Philadelphia, Pa.; thereby the grantee was charged with notice of its provisions, as fully and effectively as if the will and the proper certificate of its probate had been recorded in Mercer county before the commencement of those proceedings; neither he nor any one claiming under him came within the protection of section 30 of the recording act as a purchaser without notice. Weigel v. Green, supra.

[7] But plaintiffs urge that, if by these proceedings they are chargeable with notice of the will, then they have a right to rely on the construction thereof by the court; and they further urge that, as the court directed the sale of the land, it necessarily construed the will as granting such an interest, be it to Netta Graff alone, or to the class of which she was the living representative, as enabled the commissioners to convey the complete title. The proceedings, however, were not to construe the will, but to sell a minor's interest; the court acquired jurisdiction only over her interest in the land; neither the property, vested or contingent, of other persons, nor the persons themselves, were subject to the jurisdiction of the court; it is elementary that, as to them and to their interest, if any, in the land, the decree was without any binding force. Peterson v. Jackson, 196 Ill. 40, 63 N. E. 643. Moreover, the decree does not purport to construe the will or to determine any rights thereunder. And while reliance thereon may evidence the good faith of the original purchaser at the commissioner's sale, it does not relieve him from constructive notice of the will and its provisions as they may be construed and determined by a court having jurisdiction of the parties and the subject-matter.

4. Plaintiffs, however, urge that an exception to the rule that the statute of limitation begins to run against a remainderman only at the expiration of the life estate must be implied, if the remainderman is also interested in the life estate and has permitted his interest therein to be barred. We need not consider whether under any circumstances this contention is sustainable. McCoy v. Poor, 56 Md. 197; contra, Mara v. Brown, 1895, 2 Ch. 69, 96; Franke v. Berkner, 67 Ga. 264; East Rome Town Co. v. Cothran, 81 Ga. 359, 8 S. E. 737. For, in the instant case, defendant Graff, after he became of age, could not have brought or caused to be brought any effective action against plaintiffs. His was an equitable interest in his mother's legal life estate; many

years before he became of age that estate and the equitable interests dependent thereon had been lost by limitation.

5. Nor can defendant Graff be charged with laches because of any act or conduct prior to 1911. He was under no duty and therefore is charged with no wrongdoing or negligence for failure to attempt to compel his mother to begin what inevitably, after he became of age, would have been an unsuccessful action to recover the life estate. With his personal rights against his mother for her failure during his infancy to protect his interests, plaintiffs are not concerned. Even, if he knew of his prospective rights in the contingent remainder, he owed no duty to plaintiff, either to assert them before he could success- fully do so, or to notify them of an intention to assert them if and when they should become vested. He had no better knowledge than they of the facts; they were chargeable with notice of the will and its probate; he, at best, had actual knowledge of its contents; each had the same opportunity to ascertain and to determine what rights were conferred thereunder.

6. Within two years after Graff's interest was vested, this suit was begun, and ejectment proceedings thereby hindered. During that time, plaintiffs did not change their position. The delay in no manner af- fected or could affect the evidence in this case. Irrespective, there- fore, of plaintiff's inability to base affirmative relief of the character here sought on laches, or on any weakness in defendant's title, and without determining whether or not laches is a proper defense to a counterclaim based on strictly legal rights, sought to be enforced in equity only because plaintiff had haled defendant into that forum, we are of the opinion that defendants Graff are not chargeable there- with.

7. Every element of an estoppel as against Graff is absent from the case; he made no misrepresentations; he was not silent when duty compelled him to speak; plaintiffs did nothing in reliance upon or because of his position, other than to pay the taxes that accrued after 1911; and during that period they enjoyed the possession of the premises.

8. It follows, therefore, that plaintiffs can recover nothing under their bill, and that defendants are entitled to relief under their answer as a cross-bill. As plaintiffs, however, made their improvements in good-faith belief in their ownership of the land, equity requires that the accounting be limited to the fair rental value of the land, without im- provements, from March, 1911, less the taxes thereon paid by plain- tiffs, and that the decree therefor and for the possession be condi- tioned upon defendant paying the enhanced value of the premises, due to the improvements now thereon and made by plaintiffs or their pred- ecessors in title.

The decree will be reversed, and the cause remanded for further proceedings in accordance with the views herein expressed.