ELIZABETH ADAMS THOMPSON

*v.*

ELIZABETH ADAMS, Exrx. *et al.*

*Opinion filed December 16, 1903.*

1. WILLS—*when provision making life tenant a trustee is inoperative.* A provision of a will appointing the widow as trustee is inoperative, where she is given, by the will, the sole use and benefit of all the property for life or until she re-marries, with remainder to others in their own right, and where the duties imposed upon her as trustee are no greater than her duties as a life tenant.

2. SAME—*when will does not confer power of sale.* The words "then remaining," used in a provision of the will directing distribution, at the death of the widow, of the testator's estate, "both real and personal, then remaining," do not indicate an intention to authorize the widow to sell real estate, where there is no other provision in the will which creates a doubtful power of sale to which the words "then remaining" might refer.

3. SAME—*life tenant cannot use corpus of the estate.* In the absence of a power of sale in any capacity, one entitled to the use and control of property for life or until she re-marries has no right to use the *corpus* of the estate without accounting for the same to those entitled to the fee upon her death or re-marriage.

4. SAME—*contingent remainder defined.* A contingent remainder is one limited to take effect either to a dubious and uncertain person or upon a dubious and uncertain event.

5. SAME—*when remainders are contingent.* Remainders to take effect upon the re-marriage of the life tenant, or which, in case of her death without re-marrying, go to her daughters who have survived her and to grandchildren who have survived their parents but whose parents have died before the grandparent, the widow, are contingent.

6. SAME—*what indicates a contingent remainder.* The absence of any words devising or bequeathing property to any of the descendants of the testator except in directing distribution to them upon the death or re-marriage of the widow, indicates that the testator did not intend the remainder to vest until the death or re-marriage of the widow.

7. SAME—*when decree in a will case is binding upon unborn persons.* A decree in a will case which is binding upon the representative of a class consisting of herself and any grandchildren of the testator who may thereafter be born, is binding upon the latter.

8. EQUITY—*equity may appoint trustee to sell estate, if necessary.* A court of equity has power to appoint a trustee to sell the real estate

of a testator even where no trust is created by the will; but such power will not be exercised unless it be necessary to preserve the property to the life tenant and the remainder-men.

9. SAME—*when equity will not appoint a trustee to sell real estate.* A court of equity will not appoint a trustee to sell real estate simply to enable the life tenant to make an investment which will yield her a greater income.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

F. S. LOOMIS, for plaintiff in error.

DEFREES, BRACE & RITTER, for defendants in error.

Mr. JUSTICE SCOTT delivered the opinion of the court:

George Adams, a resident of Cook county, Illinois, died testate on the 24th day of May, 1901. His last will and testament was executed on May 13, 1899, and admitted to probate on June 6, 1901. By that instrument he first directed the payment of his debts and funeral and testamentary expenses, and then made the following provisions:

"*Second*—And as to all of the residue and remainder of my estate by me owned and possessed at the date of my decease, after the payment therefrom of all my just and legal obligations by me owing at the time of my decease, as fully set forth in the last preceding clause hereof, I hereby give, devise and bequeath the same, and every part thereof, in trust to my trustee hereinafter named, for the sole use and benefit of my wife, Elizabeth Adams, so long as she shall live and remain my widow.

"*Third*—In case my said wife, Elizabeth Adams, shall marry again, after my decease, then and in that event it is my will, and I hereby order and direct, that all of my said estate, both real and personal, shall then be at once divided equally between my said wife, Elizabeth Adams, and my two daughters, Elizabeth Rebecca Adams and Emma Matilda Thompson, wife of Charles Francis

Thompson, or the survivor or survivors of them, their heirs and legal representatives, share and share alike.

"*Fourth*—And upon the death of my said wife, Elizabeth Adams, while she remains my widow, then and in that event it is my will, and I hereby order and direct, that my said estate, both real and personal, then remaining, be then equally divided between my said two daughters, Elizabeth Rebecca Adams and Emma Matilda Thompson, wife of said Charles Francis Thompson, or the survivor of them, their heirs and legal representatives, share and share alike.

"*Fifth*—In the event of the death of either one of my said daughters, leaving a child or children her surviving, during the lifetime of my said wife, Elizabeth Adams, then the entire distributive share so bequeathed to such deceased daughter hereunder shall at once, upon the death of my said wife, Elizabeth Adams, descend and pass to the surviving child or children of such deceased daughter forever, share and share alike.

"*Sixth*—It is my desire and request that my said daughter Elizabeth Rebecca Adams shall remain and have a home with my said wife, Elizabeth Adams, so long as my said wife shall remain my widow after my decease and my said daughter Elizabeth Rebecca Adams shall remain single and unmarried.

"*Seventh*—I do hereby nominate and appoint my said wife, Elizabeth Adams, to be the sole executrix of this my last will and testament, and I hereby waive the giving of any bond or security by her as such executrix, and request that she be not required by the court to give or furnish any bond other than that of her individual bond, as such executrix hereof.

"And I hereby also nominate and appoint my said wife, Elizabeth Adams, to be the sole trustee of my said estate for the purpose of carrying out the terms and conditions of the trusts established and declared by me relating to the control, management and disposition of my

said estate, and the interest and income therefrom, under this will, and in the event of her death, absence, resignation, refusal or inability to act as such trustee, then I hereby authorize and request that the then judge of the probate court of Cook county do appoint a proper, suitable and discreet person as such trustee in lieu of my said wife, for the purpose of carrying to a final conclusion the terms and conditions of the trusts by me in this will established and declared regarding the control and management hereunder of my said estate, and the interest and income therefrom, as hereinbefore stated and set forth."

The testator left a valuable estate. He owned at the time of his decease a large amount of real estate in the city of Chicago, about six hundred acres of land in Will county, Illinois, and a ranch in Custer county, Nebraska, containing fifty-three hundred and sixty acres of land.

The widow, Elizabeth Adams, qualified as executrix, and in October, 1902, filed her bill in her own right, as devisee under, trustee named in, and executor of, the last will and testament of the deceased, in the superior court of Cook county, against Elizabeth Rebecca Adams and Emma Matilda Thompson, the daughters named in the will, Charles F. Thompson, the son-in-law named in the will, and Elizabeth Adams Thompson, the only child of Charles F. and Matilda Thompson, who is a minor of the age of twelve years, the two daughters and the grandchild being the only descendants of the deceased. The bill prayed a construction of the will, the matters for determination being:

*First*—Whether the widow holds as a trustee or in her own right, and whether the trust attempted to be created by said will is effective, or whether that portion of the will devising and bequeathing said estate to the said widow in trust is inoperative.

*Second*—Whether the daughters of the testator, under said will, take a vested or contingent remainder in his estate.

*Third*—Whether the grandchild of the testator, together with other grandchildren, if any, which may hereafter be born, take, under the said will, a contingent remainder, or take as heirs and not as devisees under that instrument.

*Fourth*—Whether the widow, in any capacity, has power to sell and convey the real estate devised by the will and to convert the same into money, and invest and re-invest moneys arising therefrom, during her lifetime, and whether she is accountable to the children and descendants of the deceased for any portion of the principal of the estate that she may consume.

The adult defendants jointly answered the bill, admitting the material averments thereof and expressing a desire that the real estate, other than the homestead, be sold and the proceeds re-invested. Bernard F. Cletenberg was appointed guardian *ad litem* for the minor, and answered for her. The cause was referred to a master, who, in accordance with the decree of reference, took the proofs and reported them, together with his findings, to the court. A decree was thereupon entered in conformity with the master's findings, construing said will and approving said report. The minor, by her guardian *ad litem*, sues out this writ of error to review that decree.

The superior court adjudged that the words creating the trust were ineffective; that the widow took a life estate in all the property, real and personal, subject to determination by her re-marriage; that the testator's descendants took contingent remainders, and that the widow was vested with power to sell and convey all the estate, both real and personal, of which the testator died seized, and that she could not be required to account to the children or descendants of testator for the proceeds.

No trust is created by this will. The widow is to have the sole use and benefit of the real and personal property so long as she lives and remains unmarried, and upon her death or re-marriage possession and the title in fee sim-

ple will unite at once in the same persons. The provision of the will creating her a trustee is therefore inoperative. "A trusteeship cannot be predicated of one who holds for life, only, and for his or her own sole use and benefit, and the instrument which gives the life estate also gives the remainder to others in their own right, and no duty other than those that grow out of their legal relation is imposed upon the life tenant." (*Schaefer* v. *Schaefer*, 141 Ill. 337.) The rights, duties and obligations of the widow under this will, so long as she remains unmarried, are those of a life tenant only. The words used for the purpose of creating a trust may be rejected as surplusage.

The only language contained in this will which can be held to indicate any purpose on the part of the testator to authorize the widow to sell the real estate is that found in the fourth clause, which directs that at the death of the widow "my said estate, both real and personal, then remaining," be distributed, and it is argued that the remainder which the testator had in contemplation was that portion of his estate which should remain after such sales of real estate had been made by the widow as she might see fit to make during her lifetime. In this connection it may be observed that the preceding section of the will, which provides for the contingency of the widow's re-marriage, directs the distribution of all the estate, both real and personal, and does not qualify this description of the property by the words "then remaining." Words of similar import used by testators have been considered by this court in *Markillie* v. *Ragland*, 77 Ill. 98, *In re Estate of Cashman*, 134 id. 88, *Skinner* v. *McDowell*, 169 id. 365, and *Saeger* v. *Bode*, 181 id. 514, and in each of these cases the words were regarded as important in determining the meaning of words that preceded them in the instrument, it being doubtful from such preceding words whether a power of sale was given. Words devising that which should remain at the death of the life tenant were held to be decisive, showing that the

testator intended to give a power of sale, and to devise, at the termination of the life estate, only that which should remain unsold. But in the will before us there is no provision, either preceding or following the words "then remaining," which indicates any purpose of the testator to vest the widow with a power of sale. There is here no doubtful power of sale which can be made a certain one by the consideration of these words in this will. The testator, by the first clause of his will, directed the payment of his debts and certain expenses. He owned a large amount of live stock at the time of his death. Some loss or diminution thereof might be expected in the administration of the estate. These matters he may well have had in mind when he used the term now under discussion.

We therefore conclude that the widow has no authority, in any capacity, to dispose of the fee in the real estate; and from what we have said it also follows that she has no right to use the *corpus* of the estate, either real or personal, without accounting for the same to those who, upon her death or re-marriage, shall become entitled to the fee.

"A contingent remainder is one limited to take effect either to a dubious and uncertain person or upon a dubious and uncertain event.—2 Blackstone's Com. 168." (*Haward* v. *Peavey*, 128 Ill. 430.) So far as the devise of the remainder is concerned, which is to take effect upon the re-marriage of the widow, it is a remainder which is to take effect upon a dubious and uncertain event, because the widow may not re-marry. So far as the remainder is concerned, which is devised to take effect upon her death, it is to "dubious and uncertain persons." If the daughters survive the mother they become entitled to the estate. Their title is conditional upon their being alive at the time of their mother's decease. The title of the grandchild now *in esse*, together with any others that may be born, is conditional upon the grand-

child surviving the parent, upon that parent not surviving the grandparent, and upon the grandparent dying without re-marrying. There is another view to be taken of the matter. It will be observed that the will contains no words devising or bequeathing property to any of the descendants of the testator, except words directing distribution to them upon the re-marriage or death of the widow. This is an indication that the testator did not intend the title to the property in remainder to vest until the death or re-marriage of the widow. (*Ebey* v. *Adams*, 135 Ill. 80.) In *Haward* v. *Peavey*, *supra*, the testator devised his estate to his executor in trust for the use of his widow so long as she should live and remain unmarried, with remainder to such of his children as should be alive at the time of the widow's death or re-marriage, or to the lawful issue of such of them as might be dead leaving such issue. It was held that the estate devised to the children was a contingent remainder, because a child would not take unless he or she were alive at the time of the death or re-marriage of the widow. We regard that case as decisive of this question.

The superior court correctly decreed that the remainders taken by the descendants of the testator were contingent in their character, and the decree of that court, in so far as it is affirmed by this court, is binding upon the parties thereto and upon any grandchildren of the testator who may hereafter be born. The grandchild defendant to the bill herein, Elizabeth Adams Thompson, is a representative of the class that will be composed of herself and other grandchildren, should others be born, and the decree being binding upon her, is likewise binding upon them. *Hale* v. *Hale*, 146 Ill. 227; *Gavin* v. *Curtin*, 171 id. 640.

The bill, however, avers that certain real estate in the city of Chicago was occupied by the testator and his family in his lifetime, and by his widow since, as a homestead, and it is stated that the other real estate in the

city of Chicago, except two lots, is vacant and unoccupied; that those two lots are improved with a frame house and barn, and that the rentals therefrom are barely enough to pay the expense of maintenance, and that the other real property in Cook county, aside from the homestead, yields no income whatever; that the taxes and costs of maintenance thereof are a burden upon the personalty of the deceased, and that this realty is liable to be specially assessed in the near future for the purpose of making local improvements in the city of Chicago, which will increase the burden upon the widow's income; that the property in Will county consists of two tracts, one an eighty-acre tract, which is unimproved, and the other a tract of five hundred and twenty-one acres, which is highly improved and is known as the Custer Park farm; that the land in Nebraska is known as the Deer Creek ranch, and that neither of these two properties last mentioned is self-sustaining. The bill then avers "that the retention of said real estate and continued operation of said farm and ranch will be such a continuous drain upon the personal estate that oratrix fears that in time the same may be exhausted, thus necessitating an abandonment of said properties, and in all probabilities eventually subjecting them to a forced sale, resulting in a great sacrifice." The bill contained an alternative prayer, asking, in event the court should find that the widow did not have the power to sell and convey the real estate of the deceased, that a trustee be appointed with authority to sell and convey all the real estate of which the testator died seized, excepting the homestead property. Proof was taken in support of these averments, and the master recommended that a trustee be appointed to sell the real property if the widow was without power to dispose of and convey the same.

It is within the jurisdiction and power of a court of equity to grant the alternative relief asked by this bill, against the express wish of the donor or testator, where

the facts warrant, even where no trust exists; (*Gavin* v. *Curtin, supra;*) but in order to authorize the court to enter such decree it must appear to be necessary to do so, where no trust exists, for the purpose of preserving the property to the life tenant and the remainder-men. *Gavin* v. *Curtin, supra; Baldrige* v. *Coffey,* 184 Ill. 73.

We are asked by defendants in error, in case we reach the conclusion that the widow is without a power of sale, and reverse the decree for that reason, to remand the cause with directions to the superior court to enter a decree providing for a sale of the property through the intervention of a trustee to be appointed. We are not satisfied that the proof in this case warrants us in pursuing this course. It is evident from the will that the testator intended that the real estate should be held together, and not sold until the death or re-marriage of his widow. The evidence taken as a basis for the relief now under discussion was that of Charles F. Thompson, the son-in-law, and Clarence H. Callender, who was the financial agent of Mr. Adams for many years. It appears from the testimony of these men that the Custer Park farm is highly improved, and had been sold by the executrix for $40,000, but the sale was not consummated because the purchaser questioned her right to convey, and that the Nebraska ranch is well improved and is of the value of about $50,000; that Adams, in his lifetime, conducted both in an experimental manner and at a loss; that he did not rent any part of either property but had them fully equipped with implements and live stock of his own, and operated each through a superintendent and other employees hired by him, both the farm and the ranch being devoted largely to the business of raising and preparing live stock for market, and both seem to have been conducted more for the pleasure which the owner derived from their operation than with a view to realizing any profit therefrom; that Mr. Adams referred to the Custer Park farm as "Adams' folly;" that the ex-

205—36

ecutrix has continued to manage these properties in the same way that the testator did, reducing the expenses somewhat, and the witnesses expressed the opinion that neither property could be readily rented, for the reason that it was difficult to find renters who could rent and handle such large tracts, and that the Custer Park improvements were too valuable to be rented. We fail to find any evidence in the record at all in regard to the eighty-acre tract in Will county. The bill avers that it was rented to a tenant by the testator in his lifetime, and that the widow has pursued the same course since his death. So far as the real estate in Cook county is concerned, the averments of the bill regarding its condition and its unproductiveness are amply sustained by the proof. There is no evidence in this record at all showing the extent of the testator's personal property. It appears that he had six or seven hundred head of cattle on the Nebraska ranch and several hundred head of live stock and a large quantity of grain on the Custer Park farm. What his possessions in personalty were, aside from this, the record does not disclose. His real estate was unencumbered. He owned it all in fee except one section of land included in the Deer Creek ranch, which the witnesses stated was school land.

We think it apparent from the proof that the widow has not the experience and knowledge of business that will enable her to conduct either the ranch or the Custer Park farm through a superintendent, stocking them and operating them with her own means, to good advantage, but we are not disposed to hold from this record that those two properties cannot be rented for amounts that will exceed the cost of their maintenance. No necessity appears for the sale of any of the real estate. The income from the personal estate of the deceased may be far greater than is necessary to support the widow in the abundance to which she has been accustomed and pay any deficiency that may exist in the cost of main-

taining the real estate after the application of its income to that purpose, if there should be any such deficiency hereafter.

· The motives animating the adult members of the family of George Adams appear from the testimony of Mr. Thompson.  He says: "In my opinion it would be to the best interests of the estate if the real estate, other than the homestead,—possibly with the exception of the ranch,—should be sold and disposed of.  By that I mean the Nebraska ranch.  Outside of that there is none of the property that is self-supporting.  It is my opinion that it is to the best interests of the estate that provision be made for the sale of all real estate, including the ranch, so that, in the event sales can be made, the estate will be in a position to carry them into effect.  That is the opinion and judgment of all parties interested.  I have conversed with them, and know."  It is evident that what is sought by the complainant in the bill is simply a better investment,—one that will yield her a greater income; and however prudent and commendable that may be from a business standpoint, it is not within the contemplation of the will.  The case of *Johns* v. *Johns*, 172 Ill. 472, was a case where there was a trust.  So far as the necessity or the propriety of a court of chancery directing the sale of the fee in the real estate, that case is much akin to the one at bar.  There this court said (p. 485): "The mere fact that a sale of the land might benefit the beneficiaries more than the compliance with the terms of the trust does not furnish a reason for a decree ordering the title of the land to be disposed of in opposition to the manifest wish of the donor.  The duty of the court in dealing with such a trust is to observe and carry out the purposes and plans of the donor, unless the preservation of the subject matter of the trust, or some other like necessity, demands interference with his will and intention.  The evidence does not disclose a condition of such urgency or necessity.  The decree is

grounded solely upon the interest and convenience of the immediate beneficiaries."

The judgment which we will enter in this case, and the decree of the court below so far as affirmed by this court, will not prejudice the right of the life tenant, or other persons interested, to hereafter apply to a court of chancery for a decree directing the sale of the real estate, or any part thereof, through a trustee or otherwise, for any reason arising after the date of the filing of the bill herein.

The decree.of the superior court, in so far as it adjudges that Elizabeth Adams has power to sell and convey any of the real estate of George Adams, deceased, in fee, and in so far as it adjudges that she cannot be required to account to his children or descendants for any portion of the *corpus* of his estate, real or personal, consumed by her, is reversed. In all other respects that decree is affirmed. The cause will not be remanded.

*Decree reversed in part.*