NEWTON BARR *et al.* Appellees, *vs.* THOMAS D. GARDNER *et al.* Appellants.

*Opinion filed June 18, 1913.*

1. WILLS—*when the remainder is contingent.* Where a testator gives an undivided one-half of the residue of his estate to his wife for life and provides that "at her death" the remainder of such one-half shall go "to my lineal heirs should there be any living, if not, then to the heirs of my blood," the remainder is contingent, as it cannot be known until the death of the wife whether there will be lineal heirs living at that time.

2. SAME—*when the reversion descends to a posthumous child.* Where a testator gives an undivided one-half of the residue of his estate to his wife for life, and at her death the remainder therein to go to his lineal heirs should there be any living, if not, then to the heirs of his blood, the reversion in such undivided one-half will descend to a posthumous child as of the date of the testator's death, subject to the life estate of the wife, where there are no other lineal heirs.

3. SAME—*when contingent remainder is destroyed by merger.* Where a widow having a life estate in an undivided one-half of a tract of land quit-claims such tract to a daughter who has the reversion therein, the life estate and the reversion unite in the daughter and a contingent remainder supported by the life estate is destroyed; and if the daughter having the fee in an undivided one-half of a certain tract of land and the reversion in the other one-half quit-claims all her interest to the widow, who has a life estate in the entire tract, the widow thereby becomes the owner of the whole title, and a contingent remainder which was supported by the life estate is destroyed.

4. SAME—*when a widow cannot dispose of personal estate by will.* Where the widow is given the use, interest and income of certain personal estate and so much of the principal as may be necessary for her comfortable maintenance and support during her natural life, the remainder to go, at her death, to the testator's lineal heirs if any are living, if not, then to the heirs of his blood, the widow is only authorized to use so much of the principal as may be necessary for her comfortable maintenance and support, and what remains at her death will pass according to the terms of testator's will and cannot be otherwise disposed of by the widow.

APPEAL from the Circuit Court of Adams county; the Hon. ALBERT AKERS, Judge, presiding.

CARL E. EPLER, and MATTHEW F. CARROTT, for appellants.

E. P. ALLEN, JOHN T. INGHRAM, and H. M. SWOPE, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellees filed the bill in this case in the circuit court of Adams county for the partition of the east half of the north-east quarter and the north half of the southeast quarter of section 13, in township 1, range 9, and the division of a fund which arose from personal property and choses in action, claiming an interest in the real estate and fund under the will of Elijah Barr, deceased. The title of appellees alleged by the bill was contested by answers and the issues were referred to the master in chancery, whose report sustained the claims of the appellees. The court overruled exceptions to the report and entered a decree in accordance with it, from which this appeal was prosecuted.

Two of the appellants who demurred to the amended bill for multifariousness urge that the court ought to have sustained the demurrer and dismissed the bill and ask us to sustain that assignment of error, but while they seek to sustain their demurrer by argument and authorities, they say they do not wish a decision of the question to prevent us from passing on the merits of the case, which are also argued at great length. As we are to pass on the merits and decide what parties are entitled to both the real estate and personal property, we will not spend time or occupy space in giving our views as to whether the bill was multifarious.

The controlling issue in the case is whether the remainder in one-half of the estate of Elijah Barr after the life estate therein devised to his widow, vested at his death or was contingent until the termination of the life estate. He

259 — 17

was the owner of the real estate and of the personal property from which the fund arose, and he made his will on September 30, 1864, and died ten days afterward. After a bequest to his executor in trust to pay funeral expenses and debts he made a bequest to his sister and another to his wife, which she was to devote to religious and benevolent objects, and made the following disposition of the remainder of his estate:

"*Fourth*—I give and bequeath unto my dear wife, Elizabeth S. Barr, the use, interest and income of one-half of the remainder of my estate, of whatsoever nature and kind, real and personal and choses in action, and so much of the principal thereof as may be necessary, in addition to its use, interest and income, for her comfortable maintenance and support, during her natural life.

"*Fifth*—At the death of my wife I give and bequeath the remainder of the aforesaid half of the estate to my lineal heirs should there be any living, if not, then to the heirs of my blood.

"*Sixth*—Should a child be born to me after my decease, I give and bequeath unto it the use, interest and increase of the remainder of my estate, of whatsoever nature, whether real or personal or choses in action, and so much of the principal thereof as may be necessary for its comfortable maintenance and education until it shall be married or be twenty-one years of age, when it shall be entitled, also, to so much of the principal of the said remainder of the estate as shall remain. Provided, however, that no such child should be born to me, or not born alive, or die during its minority, it yet being unmarried and without lineal heirs, then the use, interest and increase of the said remainder of the estate shall go to my wife, Elizabeth S., during her natural life and at her death revert to the heirs of my blood.

"*Seventh*—I hereby appoint my dear wife, Elizabeth S., the guardian of such child, and commit to her the sole con-

trol and management of the whole estate after the same shall have been settled by the executors and the first three bequests herein granted shall be paid, until it shall fall by the foregoing provisions either to the said child or its lineal heirs or heirs of the blood of the testator."

The testator was forty-four years old and his wife thirty-seven years of age. They had no children and there were no lineal heirs at his death, but seven months from the day the will was made a daughter was born, who was named May A. Barr. The testator left three brothers and five sisters at his death. May A. Barr lived to be twenty-one years of age, and afterward, on May 28, 1895, was married to Thomas D. Gardner. She died on November 5, 1901, and by her will left to her husband all her property, including her share of the real and personal estate received from her father and that conveyed to her by her mother, after giving the income of her personal estate to her mother for life. Elizabeth S. Barr, the widow, died on March 6, 1910. May Barr Gardner had no child, and at the death of the widow there were no lineal heirs of Elijah Barr. The proviso to the sixth paragraph of the will, conditioned that no child should be born to the testator or not born alive or die during minority, did not take effect. The child was born alive, and under the will had the use of one-half of the estate for her comfortable maintenance and education until she became twenty-one years of age, during which time the control and management of that half was given to the widow, and then May A. Barr became vested with the remainder. The controversy relates to the other half of the estate.

The appellants contend that the testator intended to leave the remainder in one-half of his estate to his lineal heirs living at the time of his death, but if he left no lineal heirs at his death then it was to go to the heirs of his blood, and under that provision it vested in the unborn child at his death. The argument is, that the posthumous

child was capable of taking as an heir at the death of the
testator; that for the purposes of construction it was to
be considered as a child in existence, and that at his death
the child was his lineal and only heir, subject to the con-
tingency of her being born alive. The appellees contend
that the remainder was to go, on the death of the widow,
to the lineal heirs of the testator if any were living at that
time, and if none were living, then to the heirs of his
blood. Seeking for the intention of the testator in the
words he used as the recognized basis for construing his
will, we find that he contemplated the birth of a child and
his own death before that event; that he gave to his wife
a life estate in one-half of his property for her maintenance
and support, and also gave her the other half in trust, in
case the child should be born, for the maintenance and
support of such child until the child should marry or be
twenty-one years of age, when the half so held in trust
should vest in the child. The trust was to continue until
that half of the estate should fall either to the child or its
lineal heirs or heirs of the blood of the testator. By para-
graph 5 of the will the remainder in the half in which the
widow was given a life estate was devised at her death
to the testator's lineal heirs if there should be any living,
and if not, then to the heirs of his blood. The child
afterward born was capable of taking as an heir at the
death of her father, but that does not affect the question.
There was no present fixed right of future enjoyment in a
determinate person or persons until the death of the wife,
but the uncertainty was as to whether lineal heirs or heirs
of the blood would take. The postponement was not for
the purpose of letting in the life estate of the widow, but
on account of the uncertainty as to whether there would
be, at the death of the widow, living lineal heirs. The
remainder was contingent because it was limited to take ef-
fect to dubious and uncertain persons, under the rules de-
clared in numerous cases. (*Thompson* v. *Adams,* 205 Ill.

552; *Spengler* v. *Kuhn*, 212 id. 186; *Cummings* v. *Hamilton*, 220 id. 480; *Brownback* v. *Keister*, 220 id. 544; *Brechbeller* v. *Wilson*, 228 id. 502.)   The devise of the remainder to the lineal heirs of the testator, if any should be living at the death of the widow, can only be referred to that date.   The fact could not be definitely ascertained at the time of the making of the will nor at the death of the testator, and could only be determined at the death of the life tenant.   The court did not err in construing the remainder as contingent.

By virtue of the will the daughter, May A. Barr, had the fee in an undivided one-half of the north half of the south-east quarter of the section, and, subject to the life estate of the widow, the reversion in fee in the other undivided one-half descended to her as heir-at-law of the testator.   (*Peterson* v. *Jackson*, 196 Ill. 40.)   On May 31, 1886, the widow, Elizabeth S. Barr, quit-claimed that tract to the daughter, so that the life estate merged in the reversion in fee and the contingent remainder was defeated.   (*Bond* v. *Moore*, 236 Ill. 576.)   May A. Barr then had the whole title to the tract.   On the same day she made her quit-claim deed of the east half of the north-east quarter to her mother, Elizabeth S. Barr, for her natural life, only.   The widow then had a life estate in the whole of that tract, and, subject to the life estate, the daughter was the owner of one-half in fee and the reversion in fee in the other one-half.   Just before the marriage of May A. Barr she quit-claimed all interest in the east half of the north-east quarter to her mother, and that deed conveyed the fee in an undivided one-half which May A. Barr had under the will and the reversion in fee in the other one-half.   The widow's life estate merged in the fee and the contingent remainder was destroyed, so that Elizabeth S. Barr was then the owner of the whole title in that tract and it was disposed of by her will.   The decree was incorrect in determining the titles to the real estate.

The widow, Elizabeth S. Barr, was given the use, interest and income of one-half of the remainder of the personal estate after the payment of funeral expenses, debts and bequests, and so much of the principal as might be necessary for her comfortable maintenance and support during her natural life, and at her death, there being no lineal heirs of the testator living, the heirs of his blood became entitled to the remaining one-half of the personal estate of Elijah Barr. (*Boyd* v. *Strahan,* 36 Ill. 355.) She was only authorized to use so much of the principal as might be necessary for her comfortable maintenance and support, and she could not otherwise dispose of the principal. The court did not err in so finding.

The decree is reversed and the cause is remanded to the circuit court, with directions to enter a decree in accordance with the rights of the parties as herein declared.

*Reversed and remanded, with directions.*