(No. 29000.— )

ELIZABETH O'NEIL HAYDEN *et al.*, Appellees, *vs.* LUCILLE HAYDEN MCNAMEE *et al.*—(JAMES E. O'NEIL, *et al.*, Appellants.)

*Opinion filed November 21, 1945.*

WILLIAM R. BACH, KAYWIN KENNEDY, and WILLIAM J. BACH, all of Bloomington, for appellants.

PRATT, HEFFERNAN & RAMSEYER, of Bloomington, for appellees.

Mr. JUSTICE SMITH delivered the opinion of the court:

This is an appeal from a decree of the circuit court of McLean county. The purpose of the suit was the partition of a certain farm owned by Daniel M. O'Neil, in his lifetime. The construction of certain provisions of his last will and testament is involved.

Daniel M. O'Neil died testate on February 13, 1922, a resident of Bloomington, McLean county, Illinois. He executed his last will and testament on June 21, 1918. He also executed a codicil to his will on July 15, 1920. By his will, he disposed of some nineteen hundred acres of land and other real and personal property. He had eleven children, all of whom survived him. This suit involves the ownership of only one farm, which is identified in the record as the "Glissman farm." It will be so referred to in this opinion. The suit was brought by three of his children and one granddaughter for the partition of said farm between six of the surviving children of the testator, and the surviving children of three of his deceased children.

The will is long and somewhat involved. We shall consider and refer in this opinion only to those provisions relating to the disposition of the Glissman farm, and such other provisions as tend to indicate the intention of the testator in his disposition of that farm. No other real estate and no other provisions of the will are involved.

The testator, in addition to the disposition of considerable property by other provisions of his will, by the eleven subparagraphs of paragraph five devised a farm to each of his eleven children. The Glissman farm was devised by subparagraph F of paragraph five, "To my son, William D. O'Neil and the heirs of his body." Then, after setting out the legal description of the subject of the devise, it was designated by the testator as the Glissman farm. By similar language in other subparagraphs of paragraph five, he made like devises to his other ten children.

By the sixth paragraph of his will, he provided: "* * * In the case of the devises to each of my said children, and the heirs of his or her body contained in this will, and above described it is my intent and desire to devise a life estate in the several tracts of real estate to a son or daughter respectively therein named, and at his or her death, that such tract of land shall pass to, and vest in his or her children if any are then living, and in equal parts or shares, if more than one, but per stirpes, that is, that if any of my said children, at his or her death, leave surviving issue of a deceased child who has died in the life-time of said child of mine, such issue of deceased child, shall take among them the share of their ancestor, such grandchild of mine would have taken if living. But if any of my children at the time of his or her death, leave no issue of his or her body, then surviving, said tract of land shall pass to, and vest in fee simple, absolutely, in my children who are then living, share and share alike, but in that case, the issue then living of any deceased child of mine shall represent their ancestor, such child of mine, and take per

stirpes, the share such ancestor, my child would have taken, if living. In the case of my son, Philip J. O'Neil, and my daughter, Margaret O'Neil Hayden, the same provision shall apply, but as of the date of the deaths of the children of said Philip /J. O'Neil and Margaret O'Neil Hayden. That is, I desire my said son and daughter each to hold the real estate devised to him or her, for the term of his or her life, and subject to such life estate, that their children who are living at my death, shall take such land, but only for life. At the death of each of my said grandchildren, who are the children of said Philip J. O'Neil or Margaret O'Neil Hayden, the share of land which such grandchild held for life, shall then pass to his or her child or children, surviving at his or her death, if any. If any such grandchild, that is, a child of my said son, Philip J. O'Neil, or of my said daughter Margaret O'Neil Hayden at his or her death shall leave no issue them surviving, his or her share of such real estate, shall pass to and vest in his brothers and sisters then living, if any, and share and share alike equally, if more than one but the children or issue of any deceased brother or sister, if any, to represent their ancestor, and take such share as such deceased ancestor the brother or sister of such grandchild dying without issue would have taken, if living. And in default of brother or sister, or issue of deceased brother or sister to take same, then such share shall pass as hereinabove provided, in the case of my own children, that is, to my then living children, if any, including among them the issue of any other deceased child. I further request that my said children and each of them shall not sell or mortgage said real estate, during their respective lifetime."

The above provision in the sixth paragraph of the will was, by the codicil executed on July 15, 1920, modified as to his daughter Mary Ellen O'Neil Hanley. Such modification is not, however, material in this case, for the rea-

son that by the provisions of the codicil she took no interest, either vested or contingent, in the Glissman farm.

The testator, at his death, left no widow, but left him surviving Mary Ellen O'Neil Hanley, Philip J. O'Neil, Elizabeth O'Neil Hayden, Johanna O'Neil Fahey, Margaret O'Neil Hayden, James E. O'Neil, Daniel P. O'Neil, Nellie O'Neil Morrissey, Agnes O'Neil Shields, Julia O'Neil Greenleaf (Rhodes), and William D. O'Neil.

Mary Ellen O'Neil Hanley died August 16, 1940. It is unnecessary to enumerate her children, as neither she nor her children took any interest in the Glissman farm, under the will as modified by the codicil. Margaret O'Neil Hayden died in September, 1938. She left surviving, Lucille Hayden McNamee, her daughter. Lucille Hayden McNamee was living at the death of the testator. Nellie O'Neil Morrissey died August 29, 1941. She left surviving, Mary Lucille Morrissey, her daughter. After the deaths of Mary Ellen O'Neil Hanley, Margaret O'Neil Hayden and Nellie O'Neil Morrissey, testator's son William, the devisee named in subparagraph F of paragraph five of the will, died without issue. Testator's son Philip died on April 18, 1944, which was after the death of William, and after the suit was brought. He left surviving Daniel M. O'Neil and Ethel O'Neil, his children and only heirs-at-law. They were made parties individually, and as executors of their father's will, during the pendency of the suit, by an amendment made to the complaint on August 26, 1944. Daniel M. and Ethel, children of the testator's son Philip, were both living at the death of the testator.

It was alleged in the complaint, as amended, that upon the death of William, fee-simple title to the Glissman farm vested in the children of the testator and the children of the deceased children of the testator, then living, except the children of Mary Ellen, in the following proportions, viz: Elizabeth, Johanna, Daniel P., Agnes, James and

Julia, each a one-ninth part; Lucille Hayden McNamee, the sole surviving child of testator's daughter Margaret, a one-ninth part; Mary Lucille Morrissey, the sole surviving child of his daughter Nellie, a one-ninth part, and Daniel M. and Ethel, the surviving children of testator's son Philip, each a one-eighteenth part. The chancellor so found and decreed partition on that basis. From that decree, James, Agnes, Daniel M., and Daniel M. and Ethel O'Neil as executors of the last will and testament of Philip, perfected the appeal to this court.

Appellants contend that when subparagraph F of paragraph five and the sixth and eighth paragraphs of the will are construed together it is clear that the testator intended first to devise to his son William a life estate in the Glissman farm, and, in the event of his death without issue, a life estate over to testator's children and the issue of any of testator's children who predeceased his son William, with remainder over on the death of testator's last surviving child; that as to the interests which passed to his son Philip and his daughter Margaret, upon the death of William, the testator intended that they should take life estates, with successive life estates over to their children who were living at the death of the testator, with the remainder in fee over to the children of the children of Philip and Margaret, living at the time of the death of their parents; that it cannot be determined who will ultimately take the fee in those interests in the estate, until the death of the last surviving children of Philip and Margaret, who were living at the death of the testator. They further contend that whatever may have been the interest in the Glissman farm, which vested at the death of testator's son William, in other children and grandchildren of the testator, as to his grandchildren who were the children of Philip and Margaret, the will clearly provides that they shall not at any time, take title in fee to any part

of the testator's property; that Daniel M. and Ethel O'Neil, children of Philip, and Lucille Hayden McNamee, the daughter of Margaret, were living at the death of the testator and took life estates, only, in the Glissman farm and that it was error for the court to decree that they took interests in fee in said farm on the death of William. Appellants further contend that because of these contingent remainders, the land is not subject to partition, and that the suit was premature.

The decisive question is who succeeded to the interests in the Glissman farm upon the death of William, and the character of the interests vesting on the happening of that event. It is a cardinal rule for the construction of wills that the intention of the testator shall be ascertained, and such intention, when ascertained, must be given effect if that can be done without violating some rule of law or public policy. (*Condee* v. *Trout,* 379 Ill. 89.) The intention of the testator must be determined from an examination of the entire will and a consideration of all the language used by the testator. A will must be construed, if possible, so as to give effect to all the language used by the testator and so that no language in the will will be treated as surplusage or rendered void or insignificant. *Richardson* v. *Roney,* 382 Ill. 528; *Drager* v. *McIntosh,* 316 Ill. 460; *Tucker* v. *Tucker,* 308 Ill. 371.

The provisions of the will are such that the interests passing to Philip and Margaret and their children, upon the death of William, without issue, must be considered separately from the interests passing to testator's other children, upon the happening of that event.

We will first consider the interests in the property devised to William which, upon his death without issue, passed to the testator's son Philip, who was living at the death of William, and the estate over to Daniel M. O'Neil and Ethel O'Neil, children of Philip, upon the death of

their father. In the same connection we will consider the interest passing to the testator's granddaughter, Lucille Hayden McNamee, upon the death of William, her mother, Margaret, having died before the death of William.

From a consideration of subparagraph F of paragraph five of the will, it is clear that the testator intended to, and did, devise to his son William, and to the heirs of his body, the Glissman farm. It was, under section 6 of the Conveyance Act, (Ill. Rev. Stat. 1943, chap. 30, par. 5,) a devise of a life estate to William, with a remainder over to the heirs of his body, in the event he died leaving such heirs. *Kyner* v. *Boll*, 182 Ill. 171.

The determination of the intention of the testator, as to the interests passing on the death of his son William without issue, involves the construction of paragraphs six and eight. ·By the sixth paragraph, the testator first made certain that by the several devises in the eleven subparagraphs of paragraph five, to each of his children, he intended that they should each take only a life estate in the several tracts devised to them. He then provided that at the deaths of the life tenants, the same should pass to their children, and to the issue of any such children who died leaving children. This provision, however, was limited to the lands specifically devised to his children by paragraph five, and to his children who died leaving issue surviving. He then provided that if any of his children died without issue surviving, the land devised to such child should vest in fee simple, absolutely, in the testator's children, and in the issue of any deceased child of the testator, then living. He then made an exception as to the interests which would go to his son Philip and his daughter Margaret, upon the death of any of testator's other children without issue. As to those interests, he provided: "I desire my said son and daughter each to hold the real estate devised to him or her, for the term of his or her life, and subject to such

life estate, that their children who are living at my death, shall take such land, but only for life. At the death of each of my said grandchildren, who are the children of said Philip J. O'Neil or Margaret O'Neil Hayden, the share of land which such grandchild held for life, shall then pass to his or her child or children, surviving at his or her death, if any." He then provided that in case any grandchild who was the child of his son Philip or his daughter Margaret should die without issue, the land vested in such grandchild for life should go to the brothers and sisters of such deceased grandchild and the issue of any deceased brother or sister. And, in the event that any such deceased grandchild left no child or children and no brothers or sisters, and no issue of brothers or sisters, surviving, such share should pass to the testator's children and the issue of any deceased child of the testator, then living. This was a devise of life estates to his son Philip and his daughter Margaret, in any lands which he had specifically devised to either of his children who should die without issue, with life estates over to their children, who were living at the death of the testator, and with remainders over at the deaths of such children.

It is the contention of appellees that this limitation in the sixth paragraph of the will, as to the property devised to the son Philip and the daughter Margaret, applies only to the specific properties devised to them by subparagraphs J and K of paragraph five, respectively, and does not apply to any interest which would pass to them by reason of the death of any of the children of the testator without issue. We do not see how such construction could be adopted. To so construe this provision would be to wholly disregard it and render the plain language of paragraph six meaningless. This language used in the sixth paragraph relates to the interests which the children of the testator and their children would acquire in property spe-

cifically devised to any child of the testator by the fifth paragraph, in the event such child to whom the property was devised for life should die without issue.

Appellants call our attention to the eighth paragraph of the will, where the testator used the following language: "I am convinced that lands in Central Illinois, like those I own are the most desirable heritage I can leave to my children. I am, therefore, solicitous that my farm lands and my real estate shall remain in the hands of my children, and that the provision made by me for them and their children shall not be disturbed or lost to them. In order to insure the disposition made by me in said will shall be carried out and given effect in accordance with my desire and intention; and to avoid any premature vesting or destruction of such estates and interests, I do now hereby will and direct, and do devise that the legal title to all the real estate owned by me, and described in said will shall, upon my death, at once vest in all my children who are living at the time of my death, but in trust, and as an estate in joint tenancy, so that upon the death of each child such legal title shall immediately vest in the survivors thereof. It shall be the duty of such trustee until the death of the last survivor of same, to hold such legal title to my real estate in trust for the purposes of preserving the contingent remainders created in said land for the benefit of the children and issue of my children as therein stipulated. The beneficial title, interest and possession of the several tracts above devised to my children respectively and the heirs of the body of each and to my grandchildren and the heirs of the body of each, as in the case of my son Philip J. O'Neil and of my daughter, Margaret O'Neil Hayden, shall vest in said children and grandchildren respectively as hereinabove directed. In the event of anything happening which would otherwise cause merger or the premature destruction of any life estate created by this will, then upon the happening of any such event, and

thence forward, the trustees hereinabove named are to preserve contingent remainders and shall thereupon take active charge of such real estate so affected and shall be entitled to possession thereof, and shall thence forward pay the net income of any such tract to the same persons who would be entitled to receive the said land itself had the natural termination of such life estate occurred and from the time of the happening of such event, until the natural termination of the life estate in said tract happens by the death of the child, children or grandchildren to whom said land was set apart for life; and upon such death, the fee simple title shall vest as hereinabove directed. It being my express wish, and desire, that I respectfully ask that this will shall be so construed that said trustee shall take and hold said premises, if, and whenever it shall become necessary for them so to do, in order to preserve the future estates created by my said will, and in order to insure that each of my children shall have the use and benefit of the land intended by me for such child during his or her life, that upon the death of such child, such land shall go to the issue or heirs of the body of such child if any then survives to take same, and in default thereof, shall pass to and vest in my remaining children, including the issue, if any, of any deceased child of mine, but varied in the case of my son, Philip J. O'Neil and my daughter, Margaret O'Neil Hayden, so that the final vesting of their tracts is postponed to the death of the survivor of their children who shall be living at my death, as above provided."

It is argued that this language expresses a clear intention on the part of the testator that all of his lands shall be held intact for the benefit of his children and grandchildren, with remainders over to his great-grandchildren.

In construing a will, the court may look only to the language of the testator. Such language, however, must be considered in the light of the circumstances surround-

ing the testator at the time the will was executed. (*Lydick v. Tate,* 380 Ill. 616.) The will was executed in June, 1918. At that time, under numerous decisions of this court, it was the settled rule in this State that where a testator created a life estate in land and the remainder limited to take effect upon the termination of the life estate was contingent, a conveyance of the life estate by the life tenant and a conveyance of the reversion in fee by the heirs-at-law of the testator, either mediately or immediately, to the same person, would defeat the contingent remainder and vest the fee-simple title in the grantee. (*Spatz v. Paulus,* 285 Ill. 82.) This rule that a contingent remainder would be defeated by the merger of the life estate and the reversion was not changed until 1921, after the will here involved was executed, when the legislature passed an act which provides that no future interest shall fail or be defeated by the determination of any precedent estate or interest prior to the happening of the event or contingency on which the future interest is limited to take effect. Ill. Rev. Stat. 1943, chap. 30, par. 40.

This court takes judicial notice from its own records, that prior to the passage of the above statute, the destruction of contingent remainders by the merger of the life estate with the reversion, was a somewhat common practice in McLean and neighboring counties. (*Spatz v. Paulus,* 285 Ill. 82; *Friedman v. Friedman,* 283 Ill. 383; *Benson v. Tanner,* 276 Ill. 594; *Blakeley v. Mansfield,* 274 Ill. 133; *Hill v. Hill,* 264 Ill. 219; *Barr v. Gardner,* 259 Ill. 256; *Stoller v. Doyle,* 257 Ill. 369; *Pingrey v. Rulon,* 246 Ill. 109.) The records of this court in those cases show that the attorneys who witnessed the will here involved, appeared as counsel in some of those cases.

It is clear from the eighth paragraph that the testator attempted to use language which would prevent premature vesting, destruction or defeat of the future interests cre-

ated by his will, by the merger of the life estates with the reversions, or otherwise.

Under a proper construction of subparagraph F of paragraph five, and the sixth paragraph of the will, upon the death of testator's son William without issue, his son Philip, being then living, took a life estate, only, in the one-ninth interest in the Glissman farm. Upon the death of Philip, his children Daniel M. O'Neil and Ethel O'Neil, both of whom were living at the death of the testator, took successive life estates, with the remainder over to their children, if they leave children surviving. In the event they leave no children surviving, the remainder interest was devised to their brothers and sisters, if they leave such brothers and sisters surviving, and to the issue of any deceased brothers or sisters, then living. In the event the children of Philip die leaving no child or children or brothers or sisters, or issue of such brothers or sisters surviving, such remainder interest was devised to the children of the testator and their issue, living at the time of the death of the last survivor of said children of Philip. In no event, is the title to vest in the remaindermen until the death of the last surviving child of Philip. In whom this remainder will vest cannot now be determined. It is wholly contingent.

As to the interest in the property devised to William, testator's daughter Margaret, not being alive at the time of the death of William, her daughter Lucille Hayden McNamee, took a life estate in a one-ninth interest in the Glissman farm, with remainder over in the same manner and with like limitations and effect as the remainder vesting on the termination of the life estates passing to the children of Philip. This remainder is likewise contingent until the death of the life tenant.

The testator created contingent remainders in the two one-ninth interests in the Glissman farm which were de-

vised over to his son Philip and his daughter Margaret and their children and grandchildren upon the death of William. The facts that there are life estates and that the remainders in the two one-ninth interests in the Glissman farm are contingent, do not, however, bar a partition of the land, if the interests of the other joint owners are vested. While it is true that where the life estate extends to the whole estate and the remainder is contingent, the land cannot be partitioned during the life of the life tenant, (*Dee* v. *Dee,* 212 Ill. 338,) this rule does not apply where the life estate is only in a fractional interest in the land. Neither the existence of a life estate nor the fact that there are contingent interests in a portion of the estate, will be an obstacle to partition on the application of one in whom the remainder is vested. *Wells* v. *Dalies,* 318 Ill. 301.

This brings us to the consideration of the interests which the children of the testator, other than his son Philip and his daughter Margaret, and the surviving children of any deceased child of the testator took in the Glissman farm upon the death of the son William without issue. It will be noted that the testator, in the sixth paragraph of his will, in referring to the devises made to his children, stated that it was his "intent and desire to devise a life estate in the several tracts of real estate" devised to each of said children. He then directed that upon the death of either of his children leaving children, the property should vest in such issue. He then stated, "But if any of my children at the time of his or her death, leave no issue of his or her body, then surviving, said tract of land shall pass to, and vest in fee simple, absolutely, in my children who are then living, share and share alike" and in the issue then living of any of testator's deceased children. By this provision he expressed the clear intention that testator's living children and the issue of any deceased child, should take fee-simple title to the land devised to any child dying without issue. This provision was, however, by the next

sentence, modified, but only as to his son Philip and his daughter Margaret.

By paragraph eight, he expressed the intention that all his lands should be held intact until the termination of the life estates created by the will. In order to insure that this would be done, he devised the legal title to his children who were living at the time of his death, and the survivors, in trust, until the death of his last surviving child. This, he declared to be for the purpose of preserving the contingent remainders created in said land, "for the benefit of the children and issue of my children as therein stipulated." The only contingent remainders created for the benefit of his children and their issue, except Philip and Margaret, to which he referred by the above language, were in the lands specifically devised by paragraph five of the will. Except as to Philip and Margaret and their children and grandchildren, no contingent remainders were created in any lands passing upon the death of a child of the testator, without issue. He then goes on to say that his children and the heirs of the body of each, and in the case of his son Philip and his daughter Margaret, his grandchildren and the heirs of the body of each, shall have the beneficial use of the property devised to them. In this connection he used the following language: "The beneficial title, interest and possession of the several tracts above devised to my children respectively and the heirs of the body of each and to my grandchildren and the heirs of the body of each, as in the case of my son, Philip J. O'Neil and of my daughter, Margaret O'Neil Hayden, shall vest in my said children and grandchildren respectively as hereinabove directed." He then imposed upon the trustees the duty to preserve the contingent remainders. In the event anything should happen which would cause a merger or the premature destruction "of any life estate created by this will," the trustees are directed to take possession of the property "affected." They are directed to

take active charge of such real estate "so affected" and thereafter pay the net income to the persons who would be entitled to receive the "land itself had the natural termination of such life estate occurred." These provisions are made, the testator declares, "in order to preserve the future estates created by my said will, and in order to insure that each of my children shall have the use and benefit of the land intended by me for such child during his or her life, that upon the death of such child, such land shall go to the issue or heirs of the body of such child if any then survives to take same."

The testator, in paragraph eight, refers only to the lands in which he had specifically devised life estates to his children by paragraph five of the will, and to the interests passing to his son Philip and his daughter Margaret, and their children and grandchildren, upon the death of any child without issue. It is obvious, we think, that in the use of the language which he did use in paragraph eight, the testator had reference only to his lands in which he had created life estates and remainders. By paragraph five, he had created life estates in his children in the lands which he specifically devised to them with remainders over to the issue of those who died leaving children. Then, by paragraph six, as to the lands devised to any of his children who died without issue, he devised the remainder in fee over to his other children then living, and the issue of any of his deceased children. But, as to his son Philip and his daughter Margaret, he devised only life estates in any lands which he had devised by paragraph five to either of his children who died without issue, with life estates over to their children, living at the time of the death of the testator, and with the remainder interests over to the children of the children of Philip and Margaret. The trust provision in paragraph eight was intended to assure the vesting of the remainders in the lands specifically devised to his children by paragraph five in the children of such

devisees, in case they left children surviving, and the vesting of the remainder interests in the lands devised to any child who died without issue, in the children of the children of Philip and Margaret, living at the time of the death of the testator. Paragraph eight in nowise affected the fee-simple interests in the Glissman farm, which, upon the death of William, vested, under paragraph six, in the children and the issue of any deceased child of the testator, other than his son Philip and his daughter Margaret. By paragraph six, he devised interests in fee to his children and to the issue of any deceased child, except Philip and Margaret, in the lands devised to each of his children who died without issue. By no other provision of the will did he change or modify such devise.

When the entire will and codicil are considered, it seems clear that the testator intended that any lands devised to his children, upon the death, without issue, of the child to whom such lands were devised, should go to the testator's children and the children of any deceased child of the testator, living at that time, in fee. But as to his son Philip and his daughter Margaret, he made an exception by providing that upon the death of any of his children without issue, Philip and Margaret should take life estates, only, and that their children, living at the time of the death of the testator, should take successive life estates, with the remainder over to the children of said children of Philip and Margaret. Then, to protect the life estates and the future interests created by the will, and as a guarantee that his lands would be held intact for the benefit of his children and their children, and in the case of Philip and Margaret, their children and grandchildren, until the remainders vested, he inserted the provisions found in paragraph eight. This construction gives effect to all the language used by the testator.

It is our conclusion that upon the death of the testator's son William without issue, it was the intention of the tes-

tator that the children of the testator, other than his son Philip and his daughters Margaret and Mary Ellen, together with his granddaughter Mary Lucille Morrissey, should take vested interests in fee in the lands devised to William. The life estates created and the contingent future interests being limited to the two one-ninth interests in the lands involved, the owners of the vested interests therein were entitled to partition.

The court correctly found the interests of the parties, except as to the interests of Daniel M. O'Neil and Ethel O'Neil, children of Philip O'Neil, deceased, and the interest of Lucille Hayden McNamee, daughter of Margaret O'Neil Hayden. As to those interests, the court should have found they were only life estates with contingent remainders over at the deaths of the life tenants, as provided in the sixth paragraph of the will. All possible contingent remaindermen living and all unknown contingent remaindermen, as well as all persons who would, under the construction of the will adopted, have any possible contingent future interest in the lands are necessary parties to the suit.

The decree is reversed and the cause is remanded to the circuit court of McLean county for further proceedings consistent with the views herein expressed. Leave should be granted to make additional parties and all proper amendments to the pleadings. When all necessary parties are properly brought before the court and the unknown contingent remaindermen are properly represented by a trustee or guardian *ad litem,* if a decree for partition is entered, as to the contingent future interests the procedure pointed out in *Wells* v. *Dalies,* 318 Ill. 301, should be observed. Anything said in this opinion should not be construed as the expression of an opinion as to any of the provisions of the will, except as such provisions affect the title to the Glissman farm.

*Reversed and remanded.*