# CHARLESTON.

STEPHEN BAILES, GUARDIAN ETC. v. JOHN D. ALDERSON *et als.*

Submitted April 23, 1918.    Decided April 30, 1918.

1. GUARDIAN AND WARD—*Summary Proceeding to Sell or Lease Lands —Appearance—Appeal.*

   In a summary proceeding to sell or lease the lands of an infant under the provisions of § 12 of ch. 83 of the Code, such infant defendant over the age of fourteen years has the right to appear in such proceeding and resist the sale or lease of his lands, and he also has the right to appeal from any decree entered in such proceeding selling or leasing his lands, and to have the same reversed for error therein.    (p. 345).

2. SAME—*Sale or Lease of Lands—Insufficient Petition—Effect.*

   A petition by a guardian to sell or lease the lands of his ward, filed under the provisions of § 12 of ch. 83 of the Code, which is not signed by the guardian, and is not sworn to by him as therein required, is bad on demurrer, and in case a sale or lease is decreed thereon such decree will be reversed on appeal.    (p. 345).

3. SAME—*Sale or Lease of Lands—Interest of Infants.*

   In a proceeding to sell or lease the lands of infants, the only thing to be considered by the court is the interest of the infants, and unless it appears from such petition that such interest makes necessary the sale or lease of said lands, it is error to so decree.    (p. 345).

Appeal from Circuit Court, Nicholas County.

Proceeding by Stephen Bailes, guardian, etc., against John D. Alderson and others, infants, etc.    From decrees refusing to allow answer and cross-bill to be filed, setting aside order allowing demurrer and answer to be filed, and refusal to allow infant defendants to make any appearance, they appeal.

*Reversed and remanded.*

*G. G. Duff, S. R. King,* and *O. C. Lewis,* for appellants.

RITZ, JUDGE:

A. G. Alderson died in the year 1911, leaving a considerable estate consisting of both real and personal property. He left surviving him three sons, the defendants John D. Alderson, Albert Alderson and Luther Alderson, who were at that time infants under the age of twenty-one years. The plaintiff Stephen Bailes was by the county court of Nicholas county duly appointed guardian for each of said infants. Subsequently the defendants John D. Alderson and Albert Alderson married, and the said Bailes was likewise appointed guardian for their respective wives, Barbara Alderson and Jennie Alderson, who were both infants under the age of twenty-one years. A part of the estate left by A. G. Alderson consisted of a number of tracts of land in the county of Nicholas, in some of which he owned the fee, and in some only the mineral. In the year 1915 the plaintiff in his capacity as guardian for the infants entered into a contract with one V. H. Odell, by which he agreed to sell to the said Odell some nineteen of these tracts of land, at the price of thirty dollars per acre, subject to the confirmation of said contract by the circuit court of Nicholas county in a proceeding to be brought for that purpose. The contract provided for certain investigation to be made by the proposed purchaser, and notification by him to the said guardian of his option to take the land, and the payment of one thousand dollars of the purchase money before such proceedings would be instituted to secure the confirmation of the agreement by the circuit court. Odell elected to take the land under the contract, with the exception that as to one of the tracts the agreement was modified to the extent that a lease for mining purposes would be made therefor, instead of a sale thereof, and paid the one thousand dollars. The plaintiff thereupon gave notice to each of the infant defendants named in this proceeding, being the three children of A. G. Alderson, and the wives of the two who were married, that he would file a petition on the 5th day of September, 1916, in the circuit court of Nicholas county, at a special term of said court to be held at that time, for the purpose of having a sale of certain of the real estate of said infants. On the 5th day of

September, 1916, a petition was filed by the guardian setting up the contract which he had theretofore made with Odell for the sale of the tracts of land belonging to the infant defendants, and for the lease of one of them, and praying the court to confirm said sale, and to authorize the said guardian to fully execute said contract. A hearing was had upon this petition on that day, but the court was not satisfied to confirm the proposed sale, and continued the further consideration of the matter until the next term of the court. At the next term of the court, on the 10th day of November, 1916, the Beaver Coal & Timber Company made a proposition to lease the lands, which it had been proposed to sell, for the purpose of mining coal therefrom, and submitted a proposition of lease to the court under which it was willing to take said land, and the court after considering the same authorized the guardian to accept said proposition of lease and execute a lease to the said company in accordance therewith. Thereafter, on the 20th day of November, the said guardian did execute a lease to the said Beaver Coal & Timber Company, but not in accordance with the authority given him by the decree of November 10th. A number of modifications were made in the terms of the lease executed by the guardian, and both parties recognizing that he did not have authority to make such a lease as the one he actually executed, he, on the 25th day of January, 1917, submitted the same to the court to secure its approval of his act, and of the modifications made in the terms as originally authorized, and the court on that day entered a decree approving the modifications made and confirming the lease as made, and taking a bond from the guardian for each of the infants whose interests were affected thereby, and further providing that said lease should not become effective until the lessee, or someone for it, should execute and file with the clerk of the court a bond in the penalty of five thousand dollars, with security to be approved by said clerk, conditioned to faithfully comply on its part with the terms of said lease. Notwithstanding this provision that the lease would not become effective until such bond was given, it appears that the guardian delivered the lease to the lessee on the day before the court authorized its execution in

the modified form, for it appears from the record that it was recorded in the office of the clerk of the county court on the 24th day of January, 1917.  The bond required of the lessee by the terms of the decree was not given by it, and on the 29th day of May an order was entered at the instance of the guardian directing the issuance of a rule against the lessee to show cause why said lease should not be cancelled for its failure to comply with the terms of the decree authorizing the same.  Thereafter, on the 15th day of August, said bond was given.  In the meantime, however, on the 21st day of May, 1917, all of the infant defendants appeared by their counsel and tendered their demurrer and answer to the petition.  This demurrer and answer was allowed to be filed, subject to exceptions thereto, but no ruling was made by the court upon the demurrer, and no reply was at that time made to the answer.  On the 31st day of October, 1917, the defendants John D. Alderson and Jennie Alderson, who had then reached their majority, and the defendants Albert Alderson, Luther Alderson and Barbara Alderson, by John D. Alderson, their next friend, tendered their further answer and cross-bill, and asked leave to file the same, in which they asked to have the decrees theretofore entered set aside, the lease cancelled on the ground of irregularities in the proceeding, and upon the ground that to allow the same to stand was destructive and ruinous to their interests.  On that day the court entered a decree refusing to allow this answer and cross-bill to be filed, and further set aside the order which he had entered on the 21st day of May allowing the demurrer and answer to be filed, and refused to allow said infants to make any appearance in said cause.  This appeal is prosecuted to review the several decrees above referred to.

This proceeding is summary in its nature, and is brought under the provisions of § 12 of ch. 83 of the Code.  A proceeding to sell infants' land in a regular chancery suit brought under the provisions of § 2 of that chapter requires that the infants, if over the age of fourteen years, shall answer the bill in person under oath, and while the provisions of § 12 do not require in terms that the infants, if over the age of fourteen years, shall answer the petition, still we think that,

reasoning by analogy, when they are brought into such a proceeding they should at least be allowed to answer if they desire to do so. The purpose of having an answer from an infant over fourteen years of age in such a proceeding is based upon the theory that after one has reached that age he possesses some measure of judgment and discretion. The law contemplates that he possesses these qualities to such an extent that he is capable of selecting his own guardian, and it may be said that his acquiesence in a proposed sale of his land, or his objection thereto, would have some effect at least upon the court in considering whether or not such a sale would be advantageous to his interests. In this case the petition very carefully concealed the age of any of the infants, but we can assume from the allegations of the petition that at least two of them were over the age of fourteen years, because it shows that they were married. We are of opinion that because these infants in a regular chancery suit are required to answer in their own proper person on oath, they should be allowed to appear in a proceeding under § 12, and, of course, if they would have the right to appear in such a proceeding they would have the right to appeal from any decree entered therein as though they were adults, and to have the same reversed for error if there is error therein. The appeal here seeks to review the decree entered on the 31st of October, 1917, and all other decrees entered in this proceeding. The only decree which conferred authority upon the guardian to make the lease which is involved here, and which he did make, was the decree of January, 1917, by which the court undertook to confirm his action in executing the lease theretofore made, and providing that the same should not be effective until the bond was given by the lessee, as therein prescribed. If it was error to enter this decree upon the record as the same stood at that time, then the lease must fall and all of the subsequent proceedings must be vacated. This is not a collateral attack upon the decrees of the court, but is a direct attack to correct the same for error, and it is not material for us to inquire whether this decree is void or only voidable, for if either then it is subject to reversal upon appeal. Is the decree erroneous? Section 12 of ch. 83,

under which the proceeding was brought, prescribes that the petition shall be verified by the oath of the plaintiff. The petition filed in this case was not so verified. Neither was it signed by the guardian. We do not now hold whether this defect would render the proceeding void and subject to collateral attack, but we do hold that the failure to swear to the petition, and the failure of the guardian to sign it, renders the decree erroneous and subject to be reversed on appeal. *Dever* v. *Willis*, 42 W. Va. 365.

The sufficiency of the petition is also challenged. It is contended that the petition on its face does not make a case justifying the disposition made of the lands of these infants. The petition alleges their ownership of these lands, as well as other lands. It further alleges that the guardian has in his hands more than five thousand dollars belonging to each of the infants; it alleges that two of them are married; it alleges that the lands sought to be sold are undeveloped and are valuable largely for the mineral, and that it is uncertain when development will be made; it alleges that the taxes on the lands amount to about the sum of six hundred dollars a year, and that no returns are received from the lands out of which these taxes can be paid, but that the same have to be paid out of the personal estate belonging to the infants. It is further alleged that thirty dollars an acre is a good price for the lands, and that with the proceeds realized from their sale, at the price of thirty dollars an acre, the guardian can, by investment, secure an income which would be more advantageous to the infants than any possible increase in the value of the land. There is no necessity of any of the infants averred in the petition for selling any of their lands, or for leasing them, or disposing of them in any way. The only reason given in the petition for disposing of them which could be at all treated as a valid one is that the proceeds, when properly invested, would yield to the estate of each of the infants a larger income than they would get in the way of enhanced value from holding the undeveloped lands. Whether this would be sufficient upon which to base an order to sell the lands we need not say, for the reason that the court did not sell them, or order them sold, but authorized

a lease to be made; and this allegation of raising a fund, the income from which would benefit the infants, does not apply to the kind of lease which the court authorized. This lease provides for the payment of a rental of five hundred dollars the first year, and further provides that this rental shall be increased $250.00 each year until it reaches $1000.00, at which it shall remain until the lessee begins to mine the coal from the land. After the mining begins, it is provided that the minimum rental shall be $2000.00 per year. The lease is for a term of forty years, with the privilege to the lessee to renew it for another term of twenty years upon the same terms. There is no time provided in the lease for beginning the operations, but the same may be kept alive as long as the lessee desires by simply paying $1000.00 per annum. It is further provided in this lease that after mining operations are commenced all of the minimum royalties theretofore paid shall be repaid to the lessee in the way of royalties on coal mined by it from the property. It provides for the payment of the taxes on the lease by the lessee, but does not provide for the payment of the taxes on the land by it, so that it may be said of this lease that all it does is to confer upon the lessee the absolute dominion over the lands of the infants in consideration that the lessee pay the taxes thereon, for this is about what the minimum royalties provided would amount to, until a time arrives at which the land can be profitably developed, and that at such time the lessee shall have the right to develop the same, paying eight cents a ton for each ton of coal it mines therefrom, and take credit for all monies it has theretofore paid. The obligation imposed upon the lessee prior to the time a railroad reaches the land so that it may be developed is of little consequence, and would create no estate for the infants. It would provide only about enough money to pay the taxes on the land at the present rate, and would, of course, relieve their other estate to that extent. Under the terms of the lease there is no possibility of the creation of an estate, the income from which would more than equal the possible enhancement of the value of the land by development. It must further be borne in mind that the infant owners of this land, as may be inferred

from the allegations of the petition that two of them are married, had at the time the petition was filed almost reached their majority, and it might well be said under such circumstances that a guardian should hesitate before tying up the lands of his wards for a long number of years at a time when by waiting for a few short years they would be in position to determine for themselves what they desired to do with their lands, and when it does not appear that any advantage could possibly accrue to the infants from such act. There is no prayer in the petition originally filed in this case for authority to lease these lands at all, except as to one piece, but the court allowed an amendment to the prayer of the petition in general terms asking for authority to lease the lands if the court should be of opinion that a lease would be more advantageous than a sale thereof. We are clearly of the opinion that the petition in this case as amended did not present a case upon which the court should have authorized a lease of the lands of these infants. It does not appear from any allegation of the petition that the interests of the infants can in any way be promoted by a lease of their lands, but, on the contrary, it is patent, from the reading of the lease, that instead of their interests being promoted by this arrangement, it is almost certain that it is to the advantage of the lessee, and to their great disadvantage.

It appears from the answer that one of the infant owners of the land, as well as the wife of one of the other infant owners, has now reached the age of twenty-one years, so that, of course, the guardian no longer has any authority to act for them, or to file any petition on their behalf.

We conclude that the infants have a right to prosecute this appeal from the decrees complained of; that the decree authorizing the lease of these lands is erroneous and should be reversed, and when so reversed said infants should be allowed to appear to said proceeding and file their demurrer thereto; and if they do so said demurrer should be sustained; and any of the infants who have reached the age of twenty-one years should be dismissed from the proceeding; and if the guardian desires to amend the petition, and he is advised

that it can be amended, he should be given leave to do so; otherwise, the same should be dismissed.

*Reversed and remanded.*