## CHARLESTON.

DELYA KING, *Guardian, Etc. v.* EUGENE KING *et al.* and
DELYA KING, *Guardian, Etc. v.* S. J. T. RAY *et al.*

(Nos. 5760, 5767.)

Submitted February 8, 1927. Decided February 15, 1927.

1. GUARDIAN AND WARD—*In Statutory Proceeding to Sell or Lease Infant's Realty, Court May Not Determine Adverse Title (Code, c. 83).*

   In a proceeding under chapter 83 of the Code, to sell or lease an infant's real property, the sole object of inquiry is whether it is to the infant's interest that the sale or lease be made, and the court cannot in the same proceeding determine the rights of adverse claimants of title to the property. (p. 228).

   (Guardian and Ward, 28 C. J. § 309.)

2. SAME—*Adverse Claimant, Whose Title Was Attacked in Notice and Petition Asking Sale of Infant's Property, May Demur to Petition and Object to Jurisdiction to Determine Title (Code, c. 83).*

   In such a proceeding, an adverse claimant who was served with notice in the manner required by the statute and whose title is attacked in the notice and in the petition asking for a decree of sale, may demur to the petition and object to the jurisdiction of the court to determine the question of title. (p. 229).

   (Guardian and War, 28 C. J. § 298.)

   (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Roane County.

Suits by Delya King, guardian of Eugene King and another, against Eugene King and another, and against S. J. T. Ray and another, to sell or lease her wards' oil and gas interest in certain land. From decrees overruling the demurrers of Minnie C. Larch and S. J. T. Ray and rejecting their answers, they appeal.

> *Causes considered together; decrees*
> *reversed in part; remanded.*

*Thos. P. Ryan* and *Wm. S. Ryan,* for appellants.
*Harper & Baker,* for appellee.

MILLER, JUDGE:

In the first styled proceeding, the petitioner Delya King, as guardian of her infant children, Eugene King and Maxine King, sought, pursuant to the provisions of chapter 83 of the Code, to sell or lease the oil and gas interest of the infants, conveyed to their father J. R. King, in his life time, by the appellant Minnie C. Larch.

The pertinent parts of the deed under which the infants claim read as follows:

> "This Deed, made this 3rd day of June, 1907, between M. C. Larch and J. A. Larch, her husband, of the County of Roane and State of West Virginia, of the first part, and J. R. King, L. V. Koontz and H. G. Young and ........................... of the County of Kanawha and State of West Virginia, of the second part,
>
> Witnesseth: That the said parties of the first part for and in consideration of the sum of five hundred and twenty-five dollars ($525.00), cash in hand paid, the receipt of which is hereby acknowledged, do grant unto the parties of the second part, with covenants of general warranty, free from all liens and incumbrances ½ of the oil and ½ of the income from the gas in and underlying the real estate hereinafter described, including in this deed ½ of the royalties, incomes and rentals that may accrue upon said real estate situate in Harper District, Roane County, West Virginia,

and bounded and described as follows: \* \* \*

And it is further agreed and understood between the parties hereto that if said premises is not operated under the present lease now on said land, all of the operative rights belong to the parties of the second part, or their assigns, by giving to the owners of said real estate the one-sixteenth of oil produced and saved from the leased premises and one hundred dollars per year for each and every gas well the product of which is used and marketed off said premises, without liability for damages other than growing crops."

By a later deed the above named grantees, including J. R. King, conveyed one-half of their interest to others. Subsequently King died intestate. By her petition in the circuit court Mrs. King claims that by virtue of these two conveyances J. R. King died seized and possessed of an undivided one-sixth of all the oil and gas in said tract or parcel of land, including a like interest in the operative rights for oil and gas purposes in the land, and liable to Minnie C. Larch for 1/6 of the 1/16 of the oil produced and marketed off the land, and a 1/6 of the annual rental of $100.00 for each gas well drilled on the land when the product therefrom is marketed and used off the land; that upon the death of King his interest passed to his children, subject to her dower rights; and alleges that the right of no other person will be affected by reason of this proceeding.

Minnie C. Larch was given notice of the proceeding as follows: "And you, the said Minnie C. Larch, are notified that in addition to the several things of which the above named infants are notified that the said guardian will make application for that at the same time and place above specified, and upon her petition, as aforesaid, she will make application to said court to fix and determine your interests, estates, claims to and right in the oil and gas in the above described parcel of real estate and the nature and character of your said interests, estates, rights in and claims to said oil and gas, or either of them, at which time and place you may also attend if you so desire."

Mrs. Larch appeared pursuant to the notice, and tendered her demurrer and answer to the petition. The court overruled the demurrer and refused to permit the answer to be filed.

By her answer Mrs. Larch denies the right of the King heirs to a one-sixth interest in the oil and gas in the real estate in question, alleging that at the time she made the conveyance to King and the others, the grantees represented to her and her husband that the deed from its language conveyed only a one-half interest in the oil and gas, and that they would continue to receive one-half of the rentals, royalties and incomes that might accrue under any lease that might be placed thereon; that for a considerable time after the execution of the deed she was allowed to draw one-half of the delay rentals under the oil and gas lease then on the land, but had not for several years been allowed to draw any money of any kind on the land; and that the grantees in her deed falsely and fraudulently represented to her, in order to procure the deed, that as soon as the lease then on the land would expire, they would immediately drill a well and pay her her just proportion of the proceeds thereof, and had often thereafter promised her to drill immediately; and she denies that the interests of no other person will be affected by the proceeding, and challenges the jurisdiction of the court in the summary proceeding to construe the deed of June 3, 1907.

By the final decree complained of the court found that J. R. King died seized and possessed of an undivided one-sixth interest in the oil and gas in the land in question, subject to the right of Minnie C. Larch to a one-sixteenth of all the oil produced from the land, and $100.00 per year for each and every gas well the product of which is marketed and used off the land; and that the interests of the infant defendants would be promoted by a sale of their estate therein; and a decree of sale was entered.

The first question to be answered is that raised by Mrs. Larch's objection to the jurisdiction of the court to determine the extent of the infants' interests in all the oil and gas under the land owned by her. In most jurisdictions it has been held

that courts of equity have no inherent jurisdiction to order the sale of infants' lands. 28 C. J. 1169; 10 Enc. Pl. & Prac. 739; *Hoback* v. *Miller,* 44 W. Va. 635; *Rhea* v. *Shields,* 103 Va. 305. Jurisdiction to order such sales is vested in the circuit courts of this state by chapter 83 of the Code. The proceedings provided by the statute is a summary one, and while it requires that "all persons interested shall be made parties defendant," it has been held that: "In a proceeding by a committee of an insane person, under chapter 83, Code, ·to sell the undivided interest of such insane person in the oil and gas underlying a tract of land, the co-tenants of such insane person are not necessary parties to such proceeding." *South Penn Oil Company* v. *McIntire,* 44 W. Va. 296. The statute is a remedial one to permit the sale of lands or interests therein owned by persons under disability, and to enable their committees or guardians better to promote the interests of such persons.

The few cases we have been able to find on the subject seem to lead to the conclusion that: "The sole object of the inquiry, upon an application to sell a ward's real property, is whether it is to the interest of the ward that the sale shall be made. The court should ascertain and determine whether the facts requisite to the granting of the petition exists, and select the part or parts of the property which can be disposed of with the least injury to the ward; but it is without jurisdiction to determine whether the title to the property is good, doubtful, or bad, except in so far as it affects the question of the adequacy of the price offered by a purchaser." 28 C. J. 1179-1180, and cases cited. In *Onderdonk* v. *Mott,* 34 Barb. 106, 113, it is said: "The whole power of the court to order a sale of the land of infants is derived from the statute. There is no original jurisdiction in a court of equity. If this statutory jurisdiction can be exercised upon bill or complaint as well as in the ordinary mode by petition, still there is no authority for uniting in such a suit parties who claim a legal title adverse to the infants, compelling them to litigate that claim, and pronouncing upon it, and there are insuperable objections to such a course." In *Graff* v. *Rankin,* 250 Fed. 150, it was

held that in a proceeding by a guardian to sell his ward's property, derived under a will, the court is without jurisdiction to construe the will. (Writ of certiorari denied, 247 U. S. 510). Sée also, *Surinach* v. *Ninlliat,* 17 P. R. Rep. 63, and *Bailey* v. *Alderson,* 82 W. Va. 342.

The evident purpose of the statute was for the benefit of the infant or insane person, because no other way was provided by law by which his real property could be sold or leased. Other ample remedies are provided for ascertaining title to property. And here, if the court were permitted to construe the deed under which the infants hold, all persons holding with them or adversely to their interests would have to be made formal parties, for it appears from the pleadings filed and tendered that the title to the fee in the oil and gas is in question, which would affect the infants' co-tenants as well as Mrs. Larch. We are not inclined to extend the scope of the statute to the purposes contended for by the petitioner, for we do not think such purposes were contemplated by the legislature.

Mrs. Larch's right to interpose may be questioned, but she was brought in by notice that petitioner would ask the court to fix her estates, rights and interests in the oil and gas; and the petition prayed for the same. Whether or not a decree adverse to her interests would bind her, it might enable the guardian to put a cloud on her title, which she would have to go to the trouble and expense of removing. If the only purpose of the proceeding had been to sell the interest of the infant defendants, Mrs. Larch would not have been a necessary party, being only a co-tenant in the oil and gas involved. She could have no concern in whether the infants' interests would be promoted by a sale of their oil and gas. Such a sale would not affect her. Any one of the King heirs' co-tenants might at any time sell his interest without consulting the other co-tenants; but he could not institute a suit to determine title without making every one of them a party. But the notice and petition in this proceeding attempted to bring Mrs. Larch's title in question, and there can be no question that she was entitled to plead to the petition and object to the

jurisdiction of the court to determine title to the propery. The record shows that the circuit court considered her a party to the proceeding throughout the hearing, for upon her motion, the final decree was suspended for a period of forty-five days to give her time to apply to this court for an appeal.

The cause of *Delya King, Guardian, Etc.,* v. *S. J. T. Ray et al.,* is similar in all respects to the one just discussed. Ray's demurrer was overruled and his answer rejected.

We are of opinion that the demurrer in each case should have been sustained. The decrees in both cases will therefore be reversed insofar as they attempt to fix the rights and title of Minnie C. Larch and S. J. T. Ray in the oil and gas in and under their respective tracts of land; and the appellants will be dismissed from the proceedings, respectively, without prejudice to any of their rights, and with their reasonable costs; and the causes will be remanded.

*Causes considered together; decrees*
*reversed in part; remanded.*